## DIXIE–VORTEX CO. v. IMPERIAL PAPER BOX CORPORATION et al.

### No. 7488.

District Court, E. D. New York.

Feb. 16, 1938.

Duell & Kane, of New York City (Carlton Hill, Charles W. Hills, Jr., and M. R. Chambers, all of Chicago, Ill., of counsel), for plaintiff.

John P. Chandler, of New York City (H. C. Bierman, of New York City, of counsel), for defendants.

CAMPBELL, District Judge.

This is a suit for the alleged infringement of the four following enumerated patents:

(1) Patent No. 1,610,192, issued by United States Patent Office to Cesare Barbieri, assignor to the Vortex Manufacturing Company, for conical paper cup and process for making the same, granted December 7, 1926, on an application filed February 8, 1923.

(2) Patent No. 1,413,460, issued by the United States Patent Office to David F. Curtin, for sanitary paper cup, granted April 18, 1922, on an application filed December 5, 1919.

(3) Patent No. 1,792,724, issued by the United States Patent Office to Cesare Barbieri, assignor by mesne assignments to Vortex Cup Company, for paper-cup blank, granted February 17, 1931, on an application filed April 14, 1928.

(4) Patent No. 1,964,238, issued by the United States Patent Office to Andrew C. Wood, assignor to Vortex Cup Company, for cup for confections, granted June 26, 1934, on an application filed September 21, 1932.

The Vortex Cup Company was a corporation organized and existing under the laws of the state of Delaware, and thereafter changed its name to Dixie-Vortex Company, the plaintiff, as evidenced by a certificate of change of name made and filed in the office of the Secretary of State of the state of Delaware, on April 30, 1936.

Title to the patents in suit is in the plaintiff.

There are disclosed, in all of the patents in suit, conical paper cups, made from a single blank of simple quadrantal form, which may be cut with but small loss, from the basic paper stock. As the cups, for

sanitary reasons, are destroyed after only one use, they must be relatively cheap.

Both for compactness for shipping and convenience in handling the packing of such cups in stacked or nested relation is desirable, as in use the cups are dispensed, either mechanically or manually, one at a time, from the form in which they are delivered to the customer. Means must be provided for preventing adjacent · cups in the stack from adhering to each other.

Plaintiff has manufactured large quantities of conical paper cups, which have been used as drinking cups, and also in the dispensing of ice cream sodas and soft drinks. Lately a special and improved form of paper cup has been sold by the plaintiff for use in molding and packaging ice cream.

Conical paper cups provide an advantageous shape for molding, and a sanitary container from which the ice cream may be readily dispensed in identical portions, without being contacted by the hands of the vendor.

Defendants have interposed their answer, pleading the defenses of invalidity and noninfringement.

The defendant, Imperial Paper Box Corporation, is a New York corporation, the K. & W. Paper Novelty Corporation, is a New York corporation, the Sunny Paper Novelty Company was, at the time of the filing of the bill of complaint, a copartnership consisting of Rose Radin and Evelyn Sukoff, and now owned exclusively by Morris Lazow, Morris Sukoff, an individual, and Morris Lazow, an individual. All of defendants are inhabitants of the borough of Brooklyn, New York, in this district.

The jurisdiction of this court is not disputed.

The defendant Morris Sukoff is president of Imperial Paper Box Corporation, and was, prior to the issuance of the Wood patent, treasurer of K. & W. Paper Novelty Corporation. His daughter, the defendant Evelyn Sukoff, and the defendant Rose Radin, an employee of Imperial Paper Box Corporation, and a part-time employee of K. & W. Paper Novelty Corporation, were, at and prior to the time of the filing of the bill of complaint herein, copartners, under the name of Sunny Paper Novelty Company. The defendant Morris Lazow, president of K. & W. Paper Novelty Corporation, has acted as salesman for Sunny Paper Novelty Company, and now owns it exclusively, and has sold the alleged infringing paper cups.

The K. & W. Paper Novelty Corporation, formerly occupied the same address as Imperial Box Corporation on Newport street, borough of Brooklyn, New York, and now occupies the same address as Sunny Paper Novelty Company, at 505 Sackman street, borough of Brooklyn, New York.

Plaintiff's letters addressed to K. & W. Paper Novelty Corporation, Sunny Paper Novelty Company, Evelyn Sukoff, and Rose Radin (Plaintiff's Exhibits 23, 24, 25, and 26), all sent by registered mail, were receipted for by Rose Radin, acting for herself as to the letter addressed to her, and acting as agent for the other three enumerated defendants, as to the letters addressed to them, respectively.

Even if the Gobs cups (Plaintiff's Exhibit 5) or the cone cups (Plaintiff's Exhibit 6), which are stipulated as exemplary of the alleged infringing cups, be held to infringe, the · evidence does not show infringement by the defendants Imperial Paper Box Corporation, nor Morris Sukoff, individually.

The claims in suit of each of the patents in suit are as follows: Barbieri patent, No. 1,610,192, claims 2, 3, 4, and 5; Curtin patent, No. 1,413,460, claim 5; Barbieri patent, No. 1,792,724, the single claim; Wood patent, No. 1,964,238, claims 2 and 3.

Plaintiff contends that the patents in suit have achieved great commercial success, which it attributes to the merit of the patents.

The evidence does not sustain that contention.

The plaintiff, under its former name, extensively engaged in the manufacture of conical paper cups.

The art of paper cups is much older than the alleged inventions of any of the patents in suit, and plaintiff does manufacture and sell annually, large numbers of conical paper cups.

Two of the patents in suit, namely, Barbieri, No. 1,792,724, and Wood, No. 1,964,-238, were issued subsequent to 1930, but the evidence does not convince me that they have contributed to any substantial increase in sales by plaintiff of conical paper cups over the sales made by it in 1930.

As to the Barbieri patent, No. 1,610,192, and the Curtin patent, No. 1,413,460, it does

not seem to me that the particular merits of the cups of those patents were responsible for the commercial success attained, but, on the contrary, it was due to the intensive work that was done to introduce the use of cups in the ice cream field.

I will consider the patents in suit in the order in which the patents in suit have hereinbefore been described:

Barbieri Patent, No. 1,610,192.

Of this patent, claims 2, 3, 4, and 5 are in suit. Claims 2, 3, and 4 are directed to the product, and claim 2, which may be considered as typical, reads as follows: "Claim 2. In a paper cup of the convolute conical type, cementitious material between overlapping convolutions, the outer convolution having near the point of the cone a margin free from cementitious material whereby said margin is free to spring outward from the cup."

Plaintiff contends that the invention consists in providing a cup with an integral free springing tip portion to keep the cups separate from adjacent cups when nested, and that the patentee discovered that this feature could be incorporated in a cup made of noncoated paper.

The patentee in his specification does say:

"It is an object of the present invention to produce a cup which can be stacked in a nest without danger of becoming attached to the other cups in the nest. * * *

"It is a further object of this invention to leave the edge of the outermost convolution free from the cup for a short distance so that a small area of the paper near the point of the cup will spring a slight distance away from the cup. The small portion of lifted paper thus obtained will act as a cushioning device when the cups are arranged in stacks and so will keep the cups slightly separated from one another. This prevents the cups from coalescing into a mass. Moreover, the fact that the cups are made of waterproof paper which is not coated means that the outer surface of the cup is not covered with a substance likely to soften under warm climatic conditions and so the tendency of the cups to become cemented together is avoided."

The claims in suit, however, do not state that the extension at the tip of the cone is uncemented, nor are they directed to the tip at all.

The paper cup called for by the claims in suit is a cup of the old and well-known type, with the simple limitation of the claim being the idea of "a margin free from cementitious material" and not that the extension at the tip of the cone is uncemented.

The Curtin reissue patent, No. 15381, shows the uncemented margin portion on the outer convolution as it teaches the use of an adhesive if desired, which adhesive obviously must not be permitted to extend to the edges of the blank, and the same material being used in both cases it must spring away from the body of the cup.

The patent to Provandie (Defendant's Exhibit E) describes a cup made of paper, as usual, having an extension on the outer convolution which is free from adhesive. In that patent is found the following statement: "The tab, although flexible, is stiff enough to hold the small weight of water contained in the cup; and it is adapted to be laid against the side of the cup, so that a plurality of cups may be nested."

From this it is apparent that the series of cups were intended to be nested, with the tab flat against the side of the cup, and the tab being of flexible, yet stiff paper, it would have a springiness and thus perform the alleged new function of the Barbieri patent; that is, of preventing the cups from sticking to each other.

It is true that the tab or extention of Provandie is not at the tip of the cone, but is at some distance therefrom, approximately in the center of the cup. However, the result obtained would be the same as either position is alternative. See Figs. 2 and 6 of the Wood patent, No. 1,964,238, in suit.

Claim 5 of the Barbieri patent, No. 1,-610,192, in suit is a method claim, and provides as follows: "Claim 5. The method of forming a paper cup which consists in shaping a blank from noncoated waterproof paper, applying a cementitious material to one face of the parts of said blank which are intended to overlap, said applied material not extending to the edges of the blank, forming the blank into a convoluted conical cup, exerting pressure on the overlapping parts of the cup whereby the cementitious material is forced towards but not beyond the edges of said blank, and permitting the uncemented margin portion near the point of the cup to spring away."

Curtin reissue patent, No. 15381, shows every feature of this claim. Defendant's method does not include any forcing of adhesive towards the edge of the cup, and, in addition, the defendants use a coated paper.

212

Therefore, it seems to me that defendants do not infringe.

■ All of the claims of this patent·in suit are invalid over Curtin reissue patent, No. 15381, and claims 2, 3, and 4 are also invalid over the Provandie patent, No. 1,-125,171, as I can find no invention in the said patent in suit, over the prior art, as represented by said patents, but merely the work of a skilled mechanic. The said patent in suit shows no real advance in the art.

### Curtin Patent, No. 1,413,460.

Of this patent, only claim 5 is in suit, and it reads as follows: "Claim 5. A blank for forming conical vessels said blank being of approximately quadrantal form, having an arcuate edge and two edges radial in direction thereto, one of said radial edges being curved to provide an overlap in the completed vessel, the width of said overlap increasing toward the apex of the cup."

In the specification the edge 3 is described as curved throughout its length. In claim 5 the significant limitation is that the width of the overlap increases toward the apex of the cup.

It does not appear to me that defendant's cup has such an overlap. See Exhibit 16, by which it clearly is shown that the inner margin and outer margin are parallel with no increase in overlapping toward the apex, and there is, therefore, no infringement in defendant's cup of this claim.

But even if in defendant's cup the width of the overlap increased toward the apex of the cup, no recovery could be had as against defendants on Curtin patent, No. 1,413,460, as there was no invention in this claim in suit over the prior art.

In Curtin reissue patent, No. 15381 (Exhibit A), there is shown a dotted line, drawn by defendants on Fig. 1, from which it appears that in the cup of that patent, the overlap must and does increase towards the apex.

In Bohlman patent, No. 1,245,313 (Exhibit 6), it is best shown in Fig. 2 that the distance between the edge 12 and edge 13 increases toward the apex, as does also the width of the overlap.

In Curtin patent, No. 1,260,520 (Exhibit D), there is shown a dotted line on Fig. 2, drawn by the defendants; from which it appears in the finished cup the distance between edges 3 and 4 increases, and the overlap therefore increases toward the apex.

■ It seems to me that the three last-cited patents are a complete anticipation of claim 5, but whether that be so or not, the patent No. 1,413,460 is invalid, as it shows no invention over the prior art, but, at most, the work of a skilled mechanic.

### Barbieri Patent, No. 1,792,724.

In that patent in suit, there is only a single claim, which reads as follows:

"I claim as my invention:

"A cup blank comprising a body of substantially quadrantal form having an arcuate edge, a pair of converging edges and an extension integral with said body and connecting said edges, one of said converging edges having a section thereof progressively curved inwardly until its innermost end meets said extension so as to obviate the said edge from becoming wrinkled or distorted during the forming of the blank into a cup, the outer end of said section terminating in a straight section extending outwardly to a junction with said arcuate edge and arranged to afford a means for gripping the blank to facilitate its formation into a cup, said extension comprising a curved tab having one side constituting a continuation of one of said converging edges and its other side curved inwardly to meet said progressively curved section."

As I understand this patent, the novel feature is the concave cut-out portion 4 in one of the radial sides, and the inward curvature of the extension 6.

I do not find any concave portion in defendant's blank, and it has a straight edge on the extension; therefore, it does not infringe this claim.

The advantage pointed out in the subject-matter of this claim is allegedly in automatic forming of cups. Defendants do not use automatic means.

Curtin reissue patent, No. 15381, does not show the exact curvatures of the Barbieri patent, No. 1,792,724, but it does show the radial edge having a straight outer section and an inner section on a small angle thereto. Not only is the positioning of these two sections identical, with the positioning in said Barbieri patent, but the purpose of these two sections in the reissue patent is identical with the purpose in the Barbieri patent in suit, No. 1,792,724.

The Curtin patent, No. 1,413,460, in suit (Exhibit 2) is prior art to the Barbieri patent, No. 1,792,724, in suit, and while the outer section of the radial edge is curved,

5

it is so slightly curved, as to be straight; but the inner end has a sharp curve and the extension curves inwardly toward the radial edge.

The Bohlman patent, No. 1,245,313 (Exhibit C), shows a cup made from a blank, and differs from the Barbieri patent, No. 1,-792,724, in suit, in that, instead of having the inner end of the radial side curved, it has it angular. This angularity is more pronounced than in Curtin reissue patent, No. 15381, but it accomplishes all of the alleged results of the Barbieri patent, No. 1,792,-724.

█ The Barbieri patent, No. 1,792,724, in view of the three patents last above cited, if it be not completely anticipated, shows no invention over the prior art, but merely the work of a skilled mechanic.

Wood Patent, No. 1,964,238.

Of this patent only claims 2 and 3 are in suit, and they read as follows:

"Claim 2. As an article of manufacture, a blank for a cup adapted to receive a frozen confection comprising a segment of a circle including a curved outer edge for defining the mouth of the cup, inwardly converging side edges extending from said outer edge toward the lower end of the cup to be formed from the blank and having disposed adjacent their inner extremities a tear tab, one of said side edges having a margin of the blank adjacent thereto provided with adhesive of such amount and character as merely to hold the cup in shape but being insufficient to preclude ready separation of the side edges when the blank is stripped from a confection therein by said tear tab."

"Claim 3. As an article of manufacture, a blank for a cup adapted to receive an edible confection comprising a segment of a circle including a curved outer edge for defining the mouth of the cup, and inwardly converging side edges extending from said outer edge toward the lower end of the cup to be formed from the blank, one of said side edges having a margin of the blank adjacent thereto provided with adhesive of such amount and character as merely to hold the cup in shape but being insufficient to preclude ready separation of the side edges when the blank is stripped from a confection therein, one of said side edges having a free portion adapted to serve as a tearing tab in the stripping operation."

The alleged invention of this patent is a cup secured together by adhesive of such amount and character as to merely hold the cup in shape. The purpose of the patentee is to make the cup freely dispensing, strong enough to stay together during the dispensing, and filling it with ice cream, and weak enough to readily tear it loose, and have a tab to catch hold of when it is desired to out the ice cream.

This is the only one of the patents in suit which is directed to the subject-matter here involved; that is, a cup intended to hold a cone-shaped portion of ice cream.

The alleged invention may well be characterized as being directed to the little dabs of glue, as the alleged novel idea was the use of spaced spots or dabs of glue instead of a continuous line of glue.

The patentee in his specification says: "* * * It is not necessary to maintain a seal along the entire glued portion of the cup and, accordingly, I provide the cup blank adjacent the edge 4 with a plurality of spaced dabs of glue which, for example, may be three in number and are designated by the reference numeral 6."

Defendants' cup does not embody the use of spaced spots or dabs of glue, but does employ a continuous line of glue as had been done in the prior art.

The patent, as filed, did not make any reference to the amount or character of adhesive used.

Great difficulty has been encountered in determining what was the right amount and character of glue for the purpose, as different weather conditions affect the adhesive as do time and temperature, and the particular condition and character of the wax on the paper, and many other features.

█ Therefore, if the patentee claims such a feature, he should set forth clearly and distinctly as required by R.S. § 4888, as amended, 35 U.S.C.A. § 33, how to obtain the right amount and character of the adhesive. He has not done so, and the Wood patent in suit is, therefore, invalid for lack of adequate description.

It was well known in the prior art to form containers for holding ice cream in such a manner that the ice cream may be readily removed by stripping the paper container from the ice cream.

The following patents show structures adapted for that purpose (Exhibit F): Amos patent, No. 1,599,267; Radford pat-

ent, No. 1,628,429; Orear patent, No. 1,-859,046; Vogt patent, No. 1,906,183; and Vogt patent, No. 1,950,643.

These last-mentioned patents show that the idea of a sanitary package in which the amount of the ice cream can be measured with accuracy was well known, and that the idea of a conical shape of paper container, and one which may be stripped from the ice cream, is old. The remaining feature of the Wood patent, the idea of a plurality of dabs or spots of adhesive for facilitating the stripping action, was well known in the packaging art (Exhibit G); Falk patent, No. 1,117,016; Fisher patent, No. 1,560,681; Gere patent, No. 1,925,443; and Alexander patent, No. 1,-987,545.

The idea of stripping a paper container from ice cream is also shown in (Exhibit H) Baier patent, No. 1,778,479, and in (Exhibit I) Pederson patent, No. 1,569,568.

A conical paper container wherein the ice cream itself acts as the adhesive is shown in (Exhibit K) MacElhone patent, No. 1,888,178.

All of the elements of the claims in suit of the Wood patent are to be found in the prior art hereinbefore cited, either singly or in combination.

See, also, the following prior art patents: (Exhibit J) Barbieri patent, No. 1,-714,121, which shows a blank of substantially the shape shown by Wood, the idea of stripping the container from the ice cream, has a free margin and a tab at the apex under which the fingers of the user may be placed in order to tear the paper from the ice cream, and in which the adhesive must have been of such amount and character as to allow the stripping. (Exhibit D) Curtin patent, No. 1,260,520 (Exhibit A). Curtin reissue patent, No. 15,381, which is fully applicable to a cup for ice cream, shows a quadrantal blank with converging radial side edges, one of which is straight and the other is of two lines at a slight angle to each other. Adhesive may be applied to extension 5 which ordinarily is a free springing tip. There is also a free margin 3 without any adhesive, and the entire margin of the outer convolution is adapted for stripping purposes.

The amount and character of the glue used in the Curtin reissue patent, No. 15,-381, is such as to allow ready opening or stripping thereof.

The Wood patent, No. 1,964,238, in suit is invalid for lack of invention over the prior art. It represents no substantial advance in the art, but simply the work of a skilled mechanic.

The number of patents in suit and in evidence as prior art, and the slight difference between them is pursuasive as to their lack of invention. The patents in suit do not represent a distinct advance in the art, nor do they show invention, but only the work of skilled mechanics.

Plaintiff complains of the use of the word "Gobs" by defendants, but such complaint is solely on the ground that infringement has been aggravated by the use of that word. There is no contention by plaintiff that defendants did or attempt to palm off or of unfair competition, nor of any infringement of any trade-mark register or otherwise, owned by plaintiff. There is no evidence to show that plaintiff in its sale of cups ever attached thereto a label with the word "Gobs," nor am I convinced by the evidence whether plaintiff or defendants first used the word "Gobs."

As I have held the claims in suit of the patents in suit invalid for lack of invention over the prior art, the use of the word "Gobs" requires no further consideration.

A decree may be entered in favor of the defendants against the plaintiff, dismissing the bill of complaint herein, on the merits, with costs.

Submit proposed findings of fact and conclusions of law, in accordance with this opinion, for the assistance of the Court, as provided by Rule 70½ of the Equity Rules, 28 U.S.C.A. following section 723, and Rule 11 of the Equity Rules of this court.