### NEWARK SPRING–MATTRESS CO. v. RYAN.

(Circuit Court of Appeals, Third Circuit.   June 1, 1900.)

#### No. 3.

1. PATENTS—INVENTION—BED-SUPPORTING FRAME.
   The Palmer patent, No. 251,630, for a bed or mattress supporting frame, claim 1, is void for lack of invention and patentable novelty.

2. SAME—SUIT FOR INFRINGEMENT—ESTOPPEL.
   A release obtained by a stockholder in a corporation for past infringement of a patent in his personal business does not create an estoppel against the corporation which will prevent it from denying the validity of the patent.

3. SAME—PLEADING.
   Where the complainant in a suit for infringement relies upon an estoppel of the defendant to make the defense of nonvalidity of the patent, he should plead such estoppel in his bill, by way of anticipation.

Appeal from the Circuit Court of the United States for the District of New Jersey.

Milton E. Robinson, for appellant.
Stephen J. Cox, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decree of the circuit court of the United States for the district of New Jersey, made as of the September term, 1899, sustaining the validity of complainant's patent, No. 251,630, granted to Frederick A. Palmer, December 27, 1881, for a bed or mattress supporting frame. 96 Fed. 100. The suit is a suit in equity brought by complainant, as assignee under the patent, of certain territory, including the state of New Jersey. The patent was granted for the term of 17 years, and expired December 27, 1898,—about 6 months before the decision of the circuit court was made in the case. The defendant below is a corpora-

tion carrying on a manufacturing business at Newark, N. J. Only the first claim of the patent is claimed to be infringed. That claim is as follows:

"A bed bottom, or supporting frame for beds and mattresses, which comprises in its construction end rails, A A$^1$, which project beyond its side rails, B B$^1$, and a woven wire or other suitable fabric, C, which extends laterally outward beyond and above the side rails; B B$^1$, substantially as and for the purpose described."

The assigned errors mainly relied on are that the court erred in holding that the first claim of the patent in suit was valid; that the court erred in failing to hold that the patent in suit was void on account of the issuance to Frederick A. Palmer, the patentee of the patent in suit, of patent No. 237,586, on February 8, 1881, prior to the filing of the application for the patent in suit; that the court erred in failing to hold that the patent was anticipated by certain other patents in evidence, and by certain structures made the subject of Exhibits No. 2 and No. 10 by the defendant in the record. The specifications of the patent in suit set forth the object and essential features of the invention as follows:

"The main object of my invention is to provide a bed bottom, or supporting frame for beds and mattresses, whereby, when its side rails are set between the side rails of a bedstead, the end rails of the supporting frame will afford the means for holding the frame in position upon the bedstead without other appliances for such purpose, while at the same time the end rails of said frame will afford a support whereby the elastic fabric stretched over the frame may be extended out beyond the side rails of the bedstead, so that a person sitting upon a side edge of the fabric will not have his body come in contact with or press upon a side rail of the bedstead."

Reading this specification in connection with the claim, it appears that the essential feature of the alleged invention is moving the side rails of an ordinary bed or mattress frame inwardly, towards each other, so as to allow the ends of the crossbars to project beyond the side rails sufficiently to rest on the side rails of the bedstead. The objects to be secured, as set forth in the patent, being: First, to support the mattress frame on the side rails of the bedstead by these projections of the end rails, and thus dispense with the use of slats in the bedstead; and, second, to carry the sides of the woven-wire fabric out over the side rails of the bed, so that a person sitting upon the side edge of the fabric will not have his body come in contact with or press upon the side rail of the bed. All the elements of this construction described by the claim (that is to say, the side rails and the end bars and the fabric) were old, and are not claimed to be novel with the patentee. All that is claimed by the patentee as new is the projecting end bars, and the extension laterally outward beyond the side rails of the woven wire fabric, for the purpose described. We are not inclined to think that this device involved invention, within the meaning of the patent law, or that it is other than what would have easily occurred to an ordinarily skillful mechanic engaged in such work, as a means of supporting a bed frame, with the consequent lateral extension of the woven-wire fabric to the full length of the end bars. However this may be, we are clearly of opinion that, as claimed, the patented de-

vice lacks novelty. More than four months previous to the date of the application for the patent in suit, to wit, on February 8, 1881, the same patentee had taken out a patent, which is No. 237,586. This patent, with the proceedings as disclosed in the file wrapper, are set out in the record. The specifications of this first patent, as they now stand, say:

"My invention relates to movable frames of wood or metal, made to fit any bedstead, and  *  *  *  designed to support the bedding and to take the place of all slats."

The first claim of this patent includes end bars "extending beyond the side rails," and "a woven-wire or other suitable fabric, W, applied upon the end bars, and extending beyond or overhanging the side rails of the frame." This seems to us a characteristic and essential feature of the invention, without which the patent would not have been granted. It is identical with the essential feature of the patent in suit, and comes within the rule that forbids the issuance of a second patent to a patentee for an alleged invention, the essential characteristic of which has been already patented to the same patentee. But we refer to this prior patent, and the proceedings in the patent office that preceded its issuance, as indicated by the file wrapper, for another purpose, and that is to show that the patentee himself acquiesced in a finding of the patent office that the existing state of the art negatived the patentability of the device of the patent in suit. The original specifications of this first patent, as filed in the patent office, contained the following:

"*  *  *  Which fabric shall, at the sides thereof, be above and over and extending beyond the side rails, overhanging the same, so that the elastic fabric and the bedding thereon shall be supported, while a person sitting on the edge of the bed shall be protected and kept from the sharp edge of the mattress frame, and also prevented from tilting backward in a depressed place between one of the side rails of the frame and the woven wire or other fabric."

In acting on the application as originally filed, the patent office held that the paragraph just quoted should "be erased, in view of the patent to O. A. A. Rouillion, No. 33,685, of November 5, 1861, in bed bottoms." The specifications also contained the following statement:

"By my invention I obtain a mattress frame that can be used to great advantage in iron bedsteads, from the fact that the end rail or bar projects over the side rails, and furnishes a support from the mattress frame upon the sides of the bedstead, and the fabric is enabled to extend over and beyond the entire width of the bedstead, leaving neither of the rails uncovered, while, with mattress frames heretofore used, extra irons, of Z form, are required, on which to suspend the mattress frame within the bedstead; and, as in such case the fabric cannot overhang the sides,—being narrower than the frame,—more or less of width as resting surface is lost."

And as to this the patent office said:

"The ensuing paragraph is objectionable, as it fails to recognize the existing state of the art."

Upon this finding and reference, the applicant struck out all of the before-quoted matter from his original specifications, and by so doing must be taken to have acquiesced in the action of the patent office, and to have practically admitted that the essential features

of the patent in suit had been anticipated and lacked novelty. But the defendant below, and the appellant here, has placed in the record, as exhibits, certain structures, and also certain patents, which claim and describe, and in their drawings exhibit, a device for wire mattresses and bed bottoms that clearly embody these essential features of the patent in suit. Exhibit 2, above referred to, presents a structure which seems to us obviously to embody the essential features set forth in the claim and specifications of the patent in suit. It is the hospital litter, which, according to the testimony, was made prior to 1879, and was set forth in a printed catalogue of 1878, with a cut which clearly exhibits the characteristics of the alleged invention. We see the end bars extended so as to rest and support the wire mattress on the sides of the litter, and the woven fabric extending laterally to the extremities of the end bars, and thus beyond the sides of the litter. If we remove from this litter its legs, or fold them under, and cut off the handles for carrying it, with a slight extension of the end bars it could be set on the bedstead precisely as the patent in suit, and accomplish the purpose which it was designed to accomplish. Curiously enough, in the specifications of the first Palmer patent, referred to (No. 237,586), the patentee seems to have had in mind this very structure, for he states:

"The object of my invention is to provide an improved movable frame or mattress, to be used in bedsteads (or to be supplied with legs and stand on the floor), in the place of slats, springs, or other appliances for the support of the bedding."

It seems impossible to us that this patentee should successfully claim novelty for the device of his patent, after this exhibit has been examined. The device was open to the use of the public, and as to it no monopoly could, at the date of the patent or since, be claimed.

Some of the patents offered in evidence also show clear anticipation of the alleged invention of the patentee. We refer especially to the Tracey patent, No. 202,302, of April 9, 1878, Fig. 6 of which shows a bed bottom having overhanging end rails and fabric exactly as called for in claim 1. The construction shown by the patent to Boda, No. 170,333, is also, in our opinion, an anticipation of the alleged invention of the patent in suit. Also, we find in the Young patent, No. 170,040, dated December 16, 1875, every feature of the patent in suit. We do not deem it necessary to discuss these anticipatory patents in detail, as we have already indicated sufficiently our reasons for denying novelty to the device of the patent in suit, as well as the element of invention, within the meaning of the patent laws.

The appellee contends that the corporation appellant is estopped to deny the validity of the patent in suit by the fact that one of its principal stockholders accepted, some months before the organization of the said corporation, a special license for the city of New York, in his own business. And he further contends for an estoppel by reason of a certain release that was obtained from him by the said stockholder and another large stockholder, as a co-partnership, just about the time of, or a few days after, the organization of the defendant company. This release was for all past infringement of the

parties, in their own personal business, and could not in any way affect the defendant corporation, as an estoppel, even if the release had not contained, as its concluding paragraph, the following: "It is understood that this does not in any way bind or affect the corporation known as the Newark Spring-Mattress Company." But another and conclusive objection to the point thus made is that the complainant has not pleaded the estoppel he claims, and defendant was without the notice in the pleadings to which he was entitled. Notwithstanding the forty-fifth equity rule, the complainant was at liberty, and should have availed himself thereof, to plead, by way of anticipation, the estoppel to the defense of nonvalidity of the patent. We are of opinion, therefore, that the testimony on this point was improperly taken, and should be stricken out of the record. The decree appealed from should therefore be reversed, and a decree dismissing the bill of complaint ordered.