**DIXIE–VORTEX CO. v. PAPER
CONTAINER MFG. CO.**

No. 7972.

Circuit Court of Appeals, Seventh Circuit.
Aug. 10, 1942.

Rehearing Denied Sept. 16, 1942.

570

Franklin M. Warden and F. Allan Minne, both of Chicago, Ill., for appellant.

Alexander C. Mabee and Samuel W. Kipnis, both of Chicago, Ill., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment, entered March 14, 1942, in a suit for patent infringement. At one time or another, 14 patents were involved, 10 of which were withdrawn by the plaintiff prior to trial. The following patents and claims remained in issue and were adjudicated:

Barbieri No. 1,610,192 applied for February 28, 1923, issued December 7, 1926, Conical Paper Cup and Process for Making the Same, claims 1, 2, 3, 4 and 5;

Holman No. 1,594,617 applied for September 15, 1924, issued August 3, 1926, Cup Forming Machine with Stacking Attachment, claims 1 and 2;

Smith & Bild No. 2,203,510, applied for December 13, 1934, issued June 4, 1940, Method and Machine for Making Paper Cups, claims 5, 6, 7, 9, 10, 11, 20, 23 and 24;

Amberg No. 2,203,513 applied for January 15, 1936, issued June 4, 1940, Apparatus for and Method of Making Containers, claims 4, 5, 8, 9, 10, 11, 13, 20, 40 and 41.

The lower court found all claims valid and infringed except Claim 1 of the Barbieri patent, which was held invalid, and Claims 5 and 7 of the Smith & Bild patent, which were held not to be infringed. The court also held that defendant was estopped to contest the validity of the Smith & Bild and Amberg patents. In the court below, as here, defendant relies upon invalidity and noninfringement.

Barbieri Patent No. 1,610,192.

This patent relates to the process of making conical paper cups. At the time of the claimed invention, and long prior thereto, cups of the same general type had been utilized as drinking cups, dispensers for ice cream sodas and other purposes. Generally, such cups were made from paper coated on one side with paraffin. During the manufacturing process, the paraffin was softened by the use of heat, and upon cooling, served to hold the cups together wherever overlapping occurred, as at the seams.

In packing and shipping, paper cups were nested, one within the other. This is advantageous as it conserves packing and shipping space. It was found, however, that this desirable method of packing was impractical for the reason that the paraffin caused the nested cups to adhere one to the other. This caused inconvenience to the user and also a waste of cups. As a result, plaintiff, so it is contended, was unable to successfully compete with flat bottomed cups which were manufactured and sold by competitors. Thus, plaintiff's handicap was its inability to properly separate and dispense its conical paper cups. The problem was to find a means by which the cups would be separated when in nested position. Barbieri found, according to plaintiff's brief, that he could not engage in successful competition if he continued the use of paraffin coated paper; continued to use the same shape of blanks theretofore in use by Vortex and shown in the earlier Barbieri, Potts and Curtin patents, all of which were owned by Vortex, or without adopting better means than was theretofore in use by Vortex for assuring separation of nested cups.

It is now contended that Barbieri, by the disclosure of the patent in suit, solved the problem by providing a method whereby conical cups could be nested for use and shipment so that they would not adhere to each other and would, therefore, be readily dispensable.

Claims in suit 2, 3, 4 and 5 are set forth in a footnote.[1] On the question of validity,

___

1 2. In a paper cup of the convolute conical type, cementitious material between overlapping convolutions, the outer convolution having near the point of the cone a margin free from cementitious material whereby said margin is free to spring outward from the cup.

3. A conical paper cup having convolu-

defendant cites Provandie Patent No. 1,-125,171, Curtin Reissue Patent No. 15,381 and Carle Patent No. 1,598,710. The lower court distinguished such prior art patents thus: "* * * Each one of these claims calls for an element substantially as follows,—'The outer convolution having near the point of the cone a margin free from cementitious material whereby said margin is free to spring outward from the cup.' This idea is not embodied in the cups of the prior art. * * *" Thus, it appears that the court relied upon the element providing for a projection at the tip of the cup. This seems to follow from the fact that Claim 1, which makes no mention of such projection, was held invalid.

It is pertinent to observe at this point that the District Court for the Eastern District of New York concluded the claims now in issue were invalid in view of the prior art. Dixie-Vortex Co. v. Imperial Paper Box Corp. et al., 22 F.Supp. 209. This judgment was affirmed by the Circuit Court of Appeals, Second Circuit, in a Per Curiam opinion. 100 F.2d 1013. Thus, we are confronted with a situation wherein the usual presumption of validity which follows their allowance by the Patent Office, is reinforced by the judgment of the lower court. On the other hand, another District Court has held the claims invalid, which holding has been affirmed by a Court of Appeals.

While the court below, as stated, appears to have relied upon the projecting flap at or near the point of the cup to distinguish the claims in suit from the prior art, we are not certain, from plaintiff's argument, that it relies upon this narrow distinction. Plaintiff stresses the fact that its blank is made of paper which is water-proofed by being impregnated with a wax paraffin solution or some other water proofing agent, in contrast with the paraffin-coated paper of the prior art. This argument, however, carries little, if any, weight insofar as Claims 2, 3 and 4 are concerned because no mention is made in these claims of this now alleged essential element. Only Claim 5 refers to a "non-coated water proof paper." Carle discloses a cup made of plain paper which was neither coated nor impregnated. Plaintiff states in its brief: "In order to avoid the disadvantages of the Carle cups as well as the disadvantages of the paraffin coated Vortex cups, Mr. Barbieri selected a paper which was neither plain nor coated,—it was impregnated with wax. This impregnation provided a smooth surface which would not cause nested cups to stick together like Carle. * * *"

So the first step in the solution of the problem was the selection of impregnated paper, although, as stated, it is mentioned only in Claim 5. It is argued that after the selection of the impregnated paper, Barbieri "was faced with the problem of extruding glue, which would glue the nested cups together." In other words, the glue was being placed so that when the blank was pressed into cup form, it would extend beyond the margin where it would be exposed and therefore cause the cups to stick together when nested. Barbieri, so it is claimed, remedied this defect by placing the glue so that it would not extend to the margin when the blank was pressed into cup form. Thus, the glue not extending entirely to the margin produced two effects—(1) there was no exposed glue, and (2) the edge of the margin was not entirely sealed, thereby attaining a separating value. The climax of this inventive process was reached when it was discovered that an unglued tab near the point of the cup had a tendency to spring outwardly from the body of the cup, thereby giving a separating effect to the nested cups. It may be that the size and form of this tab disclosed by Barbieri was an element in the improvement over Carle. It is our judgment, however, that such improvement was due more to a proper placing of the glue than to the form of the tab. It is apparent,

tions, the outermost convolution extending less distance from the point than those within and being free from the body of the cup for a fraction of a turn.

4. A conical paper cup having convolutions, and an outwardly springing paper projection adjacent the point whereby when nested said cups are resiliently held apart.

5. The method of forming a paper cup which consists in shaping a blank from non-coated waterproof paper, applying a cementitious material to one face of the parts of said blank which are intended to overlap, said applied material not extending to the edges of the blank, forming the blank into a convoluted conical cup, exerting pressure on the overlapping parts of the cup whereby the cementitious material is forced towards but not beyond the edges of said blank, and permitting the uncemented margin portion near the point of the cup to spring away.

so we think, that Carle and others of the prior art would have had an outward springing edge by applying the glue so that it would not extend to the margin of the form. We are unable to believe that Barbieri's positioning of the glue amounts to invention. It may be, as claimed, that the location of this outward springing margin at the tip of the cone was also an advantage. Again, however, this is dependent largely upon the positioning of the glue which, we think, should be discernible to one skilled in the art.

Provandie shows a cone-shaped cup having a free flexible tab that serves as a handle when the cup is filled, and he also suggests that it is "adapted to be laid against the side of the cup so that a plurality of cups may be nested." Obviously, the tab thus disclosed acts as a separating means when the cups are in nested form. It was largely upon this disclosure that Claims 2, 3 and 4 were held invalid in Dixie-Vortex Company v. Imperial Paper Box Company, supra. Referring to the tab which Provandie shows, the court, on page 211 of 22 F.Supp., said:

"From this it is apparent that the series of cups where intended to be nested, with the tab flat against the side of the cup, and the tab being of flexible, yet stiff paper, it would have a springiness and thus perform the alleged new function of the Barbieri patent; that is, of preventing the cups from sticking to each other.

"It is true that the tab or extension of Provandie is not at the tip of the cone, but is at some distance therefrom, approximately in the center of the cup. However, the result obtained would be the same as either position is alternative. * * *"

Curtin Reissue Patent, owned by the plaintiff, also is difficult to distinguish from the Barbieri patent in suit. In fact, Barbieri states: "This invention is for an improvement in cups of the type shown in the reissued Patent No. 15,381, granted June 22, 1922, to David F. Curtin. Cups of this type have hitherto been made of paper which is rendered waterproof by being coated with paraffin, wax or other suitable material. One objection to cups so made is that when packed in nested form the paraffin is apt to soften under the action of a warm climate and cause the cups to adhere so that the nest becomes a united mass. * * *" Thus, the most that Barbieri contended was that he had made an improvement over Curtin. It is also noticeable that the single objection made to the Curtin cup was its propensity to adhere, which was caused by the paraffin coating. We have pointed out heretofore the importance which Barbieri attached to the impregnated paper which he suggested, so as to obviate the paraffin coating. This is the predominant note running through his specifications, but, as stated, he made no mention of it in any of the claims in suit except Claim 5. Curtin shows a conical cup formed from a single piece of paper, including an extension which is described as lapping around the apex of the cup, the free end of which may be provided with an adhesive, if desired, to cause the said free end to adhere to the outer surface of the blank to hold the cup in formed position. In Imperial Paper Box Company case, supra, the court, in discussing Claim 5, on page 211 of 22 F.Supp., said: "Curtin reissue patent, No. 15381, shows every feature of this claim. * * *" We think this statement is substantially correct, except that Claim 5 provides for "non-coated water-proof paper," while Curtin does not. Curtin discloses the overlapping extension and all that was necessary to give the edge of this extension a separating effect when the cups were placed in nested form was to refrain from placing glue thereon. In fact, Curtin suggests that the use of adhesive in connection with his overlapping extension is optional. As already stated, there is no invention in an improvement which is dependent entirely upon the placement of the glue with reference to the edge of the tab or extension.

Plaintiff does not dispute but that all the elements of this patent are found in the prior art. Authorities are cited in support of the argument that anticipation can not be shown by reference to one prior art patent or publication for one part of the improvement, and another prior art patent or publication for another part of the improvement, etc. No doubt this is an established principle of patent law. Even so, we know of no reason why the prior art may not be properly considered on the question of invention. We need not decide whether the patent in suit is anticipated by any one of such prior art patents. It is sufficient, we think, that the prior art disclosures are such that a person skilled in the art might readily design the improvement which Barbieri claims to have made. The improvement thus made would not, in our judg-

ment, amount to invention, and the claims in suit are therefore invalid.

We have not overlooked plaintiff's argument with reference to commercial success. We are convinced that such success, as a result of the Barbieri patent, has been considerably exaggerated. From the testimony of plaintiff's general manager, it appears that its success was due largely to the discovery of a satisfactory cup dispenser. In this connection, we also note that plaintiff, in arguing validity of the Holman patent, attributes commercial success to Holman's improved mechanism for the manufacture of its drinking cups. Furthermore, it appears from the case of Vortex Mfg. Co. v. F. N. Burt Co., D.C., 297 F. '513, that the same contention as to commercial success was made in favor of the Curtin Reissue Patent. Evidently, the court was impressed with such argument, as reference is made in the opinion to the enormous sales of cups made in accordance with the Curtin disclosure.

In view of our conclusion that the claims of this patent are invalid, there is no occasion to discuss or decide the issue of infringement.

### Holman Patent No. 1,594,617.

This patent is entitled "Cup-forming Machine with Stacking Attachment." Plaintiff, in a large measure, attributes to the machine of this patent credit for commercial success in the manufacture and sale of its Barbieri cups. The claims in suit, 1 and 2, are set forth in a footnote:[2]

It will be noted that these are combination claims. One of the numerous attacks made upon their validity is that the patentee claimed more than was invented, if anything, and that his claimed combination is therefore void. There is nothing in the record to indicate that this contention was given consideration by the lower court in sustaining the claims. In fact, it appears that such a contention was not advanced. Plaintiff here makes no answer to the con-

tention except to state it is without merit. We are of the view that it can not so readily be brushed aside.

It is not open to dispute but that the prior art patents contained full disclosures of complete machines for forming conical cups from paper blanks. Of such prior art patents, Potts 1,495,039 and Barbieri 1,547,777 best illustrate their mechanism and operation. They each disclose a forming mandrel around which the paper blank is wound into cup form. Such mandrel is one of a pair of similarly sized and shaped, contacting, co-acting, stationary cone-shaped members, the other member of the pair acting as a presser. These two stationary members rotate on their respective axis in opposite directions. When a blank is fed between such a pair of stationary forming members or dies, it is gripped and pulled inward, the action simulating that of a clothes wringer. They each disclose means for discharging the cups when formed.

Potts discloses and claims the essential operations involved in forming a conical cup from a blank of conventional form. A pair of rotating conical formers or dies are disclosed. One of these is the mandrel around which the blank is wound, and the other is the presser cone. Blanks of paraffined paper are fed, one by one, by a reciprocating table, to a position between the dies which are then coming from the separated position into contacting relationship. A finger on the lower die, or mandrel, grips the leading edge of the blank and holds it as it is wound around that die into cup form. The paraffined edges of the blank are heated while on the mandrel and sealed by the line contact pressure of the co-acting dies. When the cup is completed, the dies are parted, the finger releases the cup and a blast of air, directed through the mandrel, ejects the cup through a chute into an automatic stacker. It is contended by plaintiff the machine of the Potts patent could not possibly be used to make

---

[2] 1. In a cup forming machine of the class described, the combination with a pair of cup forming dies, of means for feeding an adhesived cup blank between said dies to be formed into a cup, a cup receiving chute, means for automatically discharging the formed cup from the forming dies into the chute, and a pusher mechanism automatically operated from the machine adapted to follow the discharged cup and push the same into the chute.

2. In a cup forming machine of the class described, the combination with cup forming dies, of means for feeding a cup blank to said dies to be formed into a cup, automatic means for discharging the formed cup from the forming dies, a chute adapted to receive the discharged cups in stacked relation, and a cup pusher mechanism adapted to be operated by the cup blank feeding means to push the discharged cups into said chute to hold said cups against rebounding therefrom.

conical paper cups of the kind shown in the Barbieri patent in suit, No. 1,610,192. The basis for this contention is that the latter cups are made from impregnated paper and require the use of an adhesive to perform the function of sealing at the seam and holding the overlapping portions of the blank in fixed position. Such paraffine-coated paper cups, so it is said, do not have a tendency to unwrap when the cup is discharged from the conical former. Under such circumstances, the chutes and stackers, such as are disclosed in the Potts patent, will adequately handle the discharged cups. It is pointed out, however, that such is not the case where an adhesive is used to perform the function of sealing. We need not discuss such distinction as it is not pertinent to Barbieri 1,547,777.

We shall, therefore, consider the latter with a view of ascertaining what, if anything, Holman discloses over this Barbieri prior art machine disclosure. In doing so, we accept plaintiff's appraisement of the Barbieri patent and the improvement which it is claimed Holman made thereon. Plaintiff states in its brief:

"The Barbieri Patent No. 1,547,777 shows a machine which Mr. Barbieri invented for the purpose of making the cup shown in the Barbieri Patent No. 1,610,192. The machine has means for placing adhesives on the blank, for winding the blank into conical form, for discharging the blank, and shows, in Figure 17, a chute which Mr. Barbieri apparently thought would handle these glued cups, but, when plaintiff's predecessor attempted to put that machine into operation, it was found that the chute and stacker of this Barbieri patent would not handle the cups as they came from the conical former.

"It was Holman who then made a careful study of this problem of handling the cups after they left the conical former. In the Holman patent in suit, on Page 1 of the specification, Holman referred to the structure designed by Barbieri and covered by the Barbieri Patent No. 1,547,777, which was then in application form and was referred to as Serial No. 652,763. Holman pointed out that when the cups were discharged from that type of machine, the glue had not had time to set so that, when discharged into the chute 204 of the Barbieri patent, the cups would open up. Holman found that it was necessary to provide means for retaining these cups in their conical form. Instead of using the chute

204 of the Barbieri patent merely as a chute through which the cups passed singly into the stacker, Holman designed a chute into which the cups were nested, and kept a continuous stack of nested cups in that chute so that the last previously discharged cup was right at the mouth or entrance of the chute.

"When the next cup was discharged, it was discharged into the last cup at the mouth of the chute so that the last cup formed what might be termed a die, which would hold the next cup in the desired form while the glue was setting.

"This nest of cups moves slowly through the Holman chute and, by the time it passes out of the chute, the glue has had an opportunity to set. Holman found that these cups, as they are blown into the nest of cups in the chute, have a tendency to bounce backward toward the formers and, in view of the springiness of the paper, the cup would unwind slightly even if the chute was full of nested cups.

"In order to take care of this rebound and to keep the cup firmly nested in the stack, Holman provided a pusher which came into position in time to push the cup firmly into the stack and to move the stack onward before the cup had had time to unwind. This pusher necessarily had to move out of the way so that the next cup could be discharged into the chute, and the Holman structure provided adequately for that."

Thus, according to this statement, as we understand it, the most that plaintiff claims for the Holman improvement has to do with the cups subsequent to their discharge from the machine. The chute disclosed by Barbieri, through which the cups pass singly into the stacker, was utilized by Holman in a manner so that the cups were nested, and provision was made for a pusher designed to push the cups firmly into the stack and prevent them from bouncing backward.

Defendant contends that Holman's sole contribution to the art was to add the pusher mechanism to the Barbieri machine. A comparison of the Holman and Barbieri drawings lends support to this contention. On the other hand, the most we can deduce from plaintiff's argument is that the improvement consisted of the pusher mechanism and a somewhat different utilization of the chute disclosed by Barbieri. As to whether the precise improvement is to be

appraised in accordance with plaintiff's or defendant's theory, does not appear to be material—certainly it is not controlling.

Claim 1 consists of six elements (Claim 2 is not substantially different): (1) A cup-forming machine of the class described, (2) the combination with a pair of cup-forming dies, (3) means for feeding an adhesived cup blank between said dies to be formed into a cup, (4) a cup receiving chute, (5) means for automatically discharging the formed cups from the forming dies into the chute, and (6) a pusher mechanism automatically operated from the machine adapted to follow the discharged cup and push the same into the chute. Holman's improvement resides in element six describing the pusher mechanism. It is plain —in fact, it is not contended to the contrary —that Holman was not the inventor of the other elements called for in these claims. In other words, cup-forming machines, cup-forming dies, means for feeding blanks between such dies to be formed into a cup, a cup-receiving chute and means for automatically discharging the cup from the forming dies into the chute, were all elements found in prior art machines. As already stated, Holman's invention, if any, resides solely in the manner and means disclosed for handling of the cups after discharge from the machine of his patent, as well as from machines of the prior art.

As stated, however, Holman did not claim his improvement as such, but claimed it in combination with, and as a part of, the prior art machines. In our judgment, the situation thus created comes squarely within the condemnation of the Supreme Court in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008. (Compare Williams Manufacturing Co. v. United Shoe Machinery Corporation, 62 S.Ct. 1179, 86 L.Ed. ——, decided by the Supreme Court, May 25, 1942.)

That case involved a patent for a grease gun coupler; the gun and a headed nipple were old. The patentee had developed an improvement in the coupling member, but instead of claiming this as such, he added the old gun and nipple in an effort to re-patent the whole combination. On page 549 of 303 U.S., on page 664 of 58 S.Ct., 82 L.Ed. 1008, the court said: "* * * The invention, if any, which Butler made was an improvement in what he styles in his specifications the 'chuck' and in his claim a 'coupling member.' It is not denied

that multi-jawed chucks had been used in industry and as couplers in lubricating apparatus. Butler may have devised a patentable improvement in such a chuck in the respect that the multiple jaws in his device are closed over the nipple by the pressure of the grease, but we think he did no more than this. As we said of Gullborg in the Rogers case [infra], having hit upon this improvement he did not patent it as such but attempted to claim it in combination with other old elements which performed no new function in his claimed combination. The patent is therefore void as claiming more than the applicant invented. * * *"

In reversing a decree which sustained the validity of the patent, the court, on page 552 of 303 U.S., on page 666 of 58 S. Ct., 82 L.Ed. 1008, said: "We conclude that Butler's effort, by the use of a combination claim, to extend the monopoly of his invention of an improved form of chuck or coupler to old parts or elements having no new function when operated in connection with the coupler renders the claim void." The Rogers case referred to in the above quotation is reported as Bassick Mfg. Co. v. R. M. Hollingshead Co., 298 U. S. 415, 56 S.Ct. 787, 80 L.Ed. 1251. In discussing the effect of claiming an improvement in combination with elements old in the art, the court, on page 425 of 298 U.S., on page 791 of 56 S.Ct., said: "* * * The question then is whether, by this method, the patentee, by improving one element of an old combination whose construction and operation is otherwise unchanged, may, in effect, repatent the old combination by reclaiming it with the improved element substituted for the old element. That this cannot be done is shown by numerous cases in this and other federal courts."

We think there is no escape from the conclusion that the pronouncement of the Supreme Court in these cases applies directly to the claims of the instant patent. Holman's improvement, according it the most liberal appraisement, was directed solely to means for handling cups after they had been discharged from the machine into which they had been fed and formed in precisely the same manner as in the machines of the prior art patents. There is no difference in the construction and operation, prior to discharge of the cups in Holman's machine than that disclosed by the prior art. Paraphrasing what was said in the Lincoln Engineering Company case, supra, Holman may have devised a patent-

able improvement, but, having hit upon this improvement, he did not patent it as such but attempted to claim it in combination with other old elements which performed no new function in his claimed combination. The claims in suit are therefore void as claiming more than the applicant invented.

In view of this conclusion, there is no occasion to discuss or decide the issue of infringement.

### Smith & Bild Patent No. 2,203,510. Amberg Patent No. 2,203,513.

These patents, broadly speaking, are for improvements over Holman (the one we have heretofore held invalid). It may be more accurate to state that Smith & Bild is for an improvement over Holman, and Amberg for an improvement over Smith & Bild. Smith & Bild was applied for more than ten years after Holman, and Amberg more than two years after Smith & Bild. The record presents at least one question in common as a result of plaintiff's contention that defendant is estopped to deny their validity as held by the court below. It therefore appears practical to consider them together.

Plaintiff contends that defendant is estopped to deny validity because of certain activities of defendant's president in his dealings with the plaintiff relative to these two patents. The first point which must be disposed of is defendant's contention that no estoppel was pleaded by the plaintiff and it was, therefore, erroneously applied.

█ The pleadings consist of plaintiff's complaint in usual form charging infringement, and defendant's answer alleging the defenses of invalidity and non-infringement. The question is, may estoppel be relied upon in the absence of a plea to that effect? No case has been called to our attention and we are unable to find one where the question has been determined under the present rules of practice. Under the former rules, there are two decisions which point in opposite directions. In Woodward v. Boston Lasting Mach. Co., 1 Cir., 63 F. 609, 610, it was held: "* * * The estoppel would properly arise as a matter of rebuttal by complainant, on the proofs, and not on the pleadings. * * *" It was suggested that the plaintiff might anticipate the defenses of invalidity and allege estoppel in avoidance, but that it was optional with the pleader. In Newark

Spring-Mattress Co. v. Ryan, 3 Cir., 102 F. 693, the court ordered the evidence concerning estoppel stricken from the record for the reason that it had not been pleaded by the plaintiff. It was suggested that it should have been pleaded by way of anticipation to the defense of non-validity. We are not impressed with the idea that a plaintiff should plead estoppel in a complaint. To do so is to anticipate that the defendant will defend on the ground of invalidity. We are of the view that plaintiff should not be required to indulge in such anticipation. See Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983. If the plaintiff is required to plead estoppel, it would seem more logical to require it by way of reply to defendant's answer.

On the other hand, there appears to be merit in plaintiff's contention that, under the present rules, it was not required to plead estoppel by replication. Rule 7(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c appears to preclude the filing of a replication. Rule 8(d) provides: "Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

█ Whether or not these rules are susceptible of the construction sought by plaintiff, we need not expressly decide, as we think they are sufficiently elastic to permit the accomplishment of substantial justice. Occasions might arise where a party would suffer from an unpleaded estoppel. It might be grounds for continuance or the allowance of time to meet the facts relied upon as constituting estoppel. We do not agree with defendant's contention, however, that it was harmed by the admission of evidence in support of plaintiff's unpleaded estoppel. All of such evidence was furnished by defendant's president. Early in the case he was called as a witness on behalf of the plaintiff. Upon inquiry by the court, counsel for plaintiff stated that the purpose was to make proof upon which plaintiff would rely for an estoppel. Thus, early in the trial defendant was apprised of plaintiff's contention in this respect. No surprise was evidenced by the defendant— in fact, it is unreasonable to think that it would have been surprised as to facts within the knowledge of its president. Under such circumstances, we do not think defendant suffered any injustice from the procedure followed. This is true irrespec-

tive of the construction placed upon the rules.

The District Court rendered an opinion in which it was held that defendant was estopped to deny the validity of the patents now under consideration. Dixie-Vortex Co. v. Paper Container Mfg. Co., 43 F.Supp. 518. On pages 522, 523 of 43 F.Supp., the court relates the facts, states its conclusion and cites numerous cases in support thereof. The findings of fact adopted by the court are in conformity with those related in the opinion. We are convinced from our study of the record that the evidence supports such findings. No good purpose could be served by their re-iteration. We also are of the view that the cases cited support the court's conclusion. We therefore adopt that portion of the opinion relative to defendant's estoppel to dispute validity.

Thus, the only defense remaining to the defendant is that of non-infringe-ment. Under such circumstances, there has been considerable contrariety of views as to whether infringement must be determined solely by a reading of the claims in suit upon defendant's alleged infringing device, or whether, and if so, to what extent the prior art may be taken into consideration. There is no occasion, however, to cite or discuss the conflicting cases upon this question for the reason that it has been settled, so far as this Circuit is concerned, by the recent case of Casco Products Corp. v. Sinko Tool & Mfg. Co., 7 Cir., 116 F.2d 119. The gist of our decision is, on page 121 of 116 F.2d, stated thus: "* * * In other words if everything in defendant's construction was taught by the prior art and nothing included therein other than the application of such art, plus ordinary mechanical skill, then the mere fact that the device constructed reads upon the claims of patents, the validity of which it is estopped to deny, does not spell infringement. * * *"

Plaintiff points out each of the elements of the claims involved and makes a rather convincing showing that they read directly upon the alleged infringing device. From what we have said, however, it is apparent that the matter of infringement is not to be determined by so simple a test. The defendant is entitled, as it contends, to have its device appraised in the light of the prior art and to escape infringement even though it improved over such art, provided such improvement was the result of mechanical skill. On the other hand, the defendant being estopped to deny the validity of the claims in suit, we think there is no reason to consider its contention that at least some of them are void under the rationale of Lincoln Engineering Company v. Stewart-Warner Corporation, supra.

While the defendant is entitled to an appraisement of the prior art relative to its defense of non-infringement, it must, under the circumstances of this case, be charged with the burden of demonstrating clearly that its machine was conceived in the light of such art rather than from the teachings of the patents in suit. The circumstances to which we refer are interwoven with those upon which estoppel has been predicated, and may be briefly related: In the first place, there is no dispute as to the construction of defendant's alleged infringing machine, or the manner of its operation. It was stipulated that the accused machines (with some slight exceptions not here material) were constructed in accordance with the disclosure of Hulseman in his patent application, Serial No. 224,560. Secondly, it is inferable from Hulseman's testimony that the accused machine was patterned with reference to the patents in suit rather than the prior art.

Hulseman employed a Mr. Brewer to design the accused machine. Subsequently, he organized the defendant corporation for the purpose of manufacturing such machines. Before assignment of Smith & Bild to plaintiff, Hulseman had constructed and used a machine made in accordance therewith. Thus, he was thoroughly familiar with that machine. It is equally true that he was familiar with the teachings of Amberg long prior to the organization of the defendant.

Hulseman's testimony reveals that he disclosed in detail to Brewer the construction and operation of the Smith & Bild and Amberg machines. This was prior to the issuance of said patents, but while applications were pending therefor. At this time all right and title to such inventions had been placed in the plaintiff by assignment. Furthermore, Hulseman's disclosure to Brewer was not available to the public. Concerning his disclosure to Brewer, he testified: "The reason for the explanation was to build something different." It is also pertinent to observe, in

connection with the testimony of Hulseman, that he makes no mention of any discussion with Brewer concerning the prior art. Such discussion apparently was confined to the disclosures of the patents now under consideration. It is also obvious that his purpose was to change the structure of these patents so as to escape infringement. This he had a right to do, but his success, if such it be, must be closely scrutinized.

Smith & Bild is for an improvement over Holman and other prior art patents. In the prior machines the cup blanks were preformed and stored in a magazine from which they were fed into the machine. The essential improvement claimed by Smith & Bild had to do with the continuous feeding or advance of a strip of paper stock toward the cup-forming element with cutting means acting prior to the forming operation to successively sever cup blanks from the continuously moving strip of paper. While other points are discussed, this, no doubt, is the gist of the improvement, and the issue of infringement, so we think, must be determined largely with reference to this improvement.

■ Claims 6, 9, 10, 11, 20, 23 and 24 are in issue. Notwithstanding the stress which plaintiff is required to place upon the element of continuously advancing the strip of paper toward the forming element, there are a number of claims which do not include such element. Typical of such claims is Claim 6, and typical of the claims which include the element is Claim 9. Claims 6 and 9 are set forth in a footnote.[3] In addition to Claim 6, there is no mention of this continuous moving strip in Claims 11 and 20. Claims 10, 23 and 24, like Claim 9, require a continuous moving strip. It is conceded that defendant's structure provides for the continuous advancement of a strip of paper during the process of cutting the paper cup form. It may be that the omission of this essential element is more pertinent to validity than infringement. However, we are of the view that the use by defendant of an essential element of the patentable improvement, not called for in the claim, permits the defendant to escape infringement from that particular claim. We therefore hold that there is no infringement of Claims 6, 11 and 20.

Defendant seeks to avoid this provision for a continuously advancing strip of paper, as called for in Claims 9, 10, 23 and 24, on two grounds,—(1) that such element is found in the prior art, and (2) it is at variance with the specification and was not provided in the Smith & Bild structure. A number of prior art patents are cited which we shall not discuss. We have examined them and are satisfied they do not meet this disclosure. As stated, in the machines prior to Smith & Bild, the cutting of the blanks was usually a separate operation. In other words, the blanks were preformed. We think there is little room for doubt but that this disclosure by Smith & Bild was transplanted into defendant's structure.

Also, we are not impressed with defendant's contention that the Smith & Bild structure fails to provide for a continuous advancing strip of paper. It is true, as pointed out, that in the specification reference is made to the momentary halting of the paper. The patent discloses a reciprocating knife with which the paper is cut and which defendant claims produces a halting effect at the time the knife operates on the paper. Defendant uses what is termed a rotary knife which it is claimed permits uninterrupted advancement of the paper. We think this distinction is more imaginary than real. The testimony discloses that the halting effect, if any, occasioned by plaintiff's cutting mechanism, is so insignificant as to have little, if any, effect upon the paper's advancement.

■ With reference to Claim 9, an argument is made concerning the language

---

3 6. The method of forming conical shells which comprises feeding a strip of material, severing the strip into blanks and feeding the blanks successively to a forming station, rolling up each blank, about a point substantially in its leading edge at said station to form a cone while trimming the edges of the blank which forms the base of said cone along a circular trim line.

9. In a machine for making conical paper cups, feeding means arranged to continuously feed a strip of stock, cutting means arranged to successively sever blanks from the continuously moving strip by repeatedly cutting off the end of the strip crosswise along a line other than straight across said strip, and a forming mandrel of substantially conical shape positioned in the path of a severed blank to receive the leading edge of the blank and wind the blank about a substantially intermediate part of said edge and so that said intermediate part defines the tip end of said cup.

"a forming mandrel of substantially conical shape positioned in the path of a severed blank to receive the leading edge of the blank." Defendant argues that the word "positioned" refers to a stationary mandrel, while defendant's mandrels are not "positioned," but travel continuously. To us this is only a mechanical equivalent. The mandrel of the patent, as well as that of the defendant, picks up or receives the leading edge of the cup form as the first step in the formation of a cup. Notwithstanding a slight difference in the manner of operation, the same result is achieved.

We are convinced that defendant's structure infringes Claims 9, 10, 23 and 24.

■ As stated, Amberg purports to disclose patentable improvements over Smith & Bild. While we are dubious that the Amberg improvements represent invention, yet we are obliged, in view of defendant's estoppel, to consider the issue of infringement. Much of plaintiff's argument relative to infringement of Smith & Bild has been repeated. This is so as to the elements which are common to both patents. In our judgment, such argument carries little, if any, weight. Elements of Smith & Bild, infringed by defendant, are not material to defendant's alleged infringement of Amberg. In other words, the test of infringement must be the use by defendant of the inventive features of Amberg rather than the disclosure of the prior art. The issue is thus narrowed solely to the patentable features of Amberg as distinguished from the elements of Amberg theretofore incorporated in Smith & Bild.

Accordingly, we shall only attempt to discuss the patentable features of Amberg, which are two in number—(1) the application of spaced patches of glue to the paper prior to the cutting of blanks rather than subsequently, as is disclosed by Smith & Bild, and (2) an improved means for eject-ing the cups subsequent to their formation. Claims 13, 40 and 41 include the gluing elements, and Claims 4, 5, 8, 9, 10, 11 and 20, the ejector means. Claim 40, typical of the former class, and Claim 4, typical of the latter class of claims, are set forth in a footnote.[4] It may be noted that none of the ejector claims contains the gluing element and none of the gluing claims specifies when the glue is to be applied, except that it is to be applied to the paper "before commencing the forming of the cup."

Plaintiff's argument makes it plain that it relies mostly upon the gluing feature, both for validity of the patent and its infringement. It states in its brief: "The claims in suit are directed to the proper placement of the gluing operation." Plaintiff's contention in this respect is to the effect that in Smith & Bild the glue was applied to the blanks after they had been severed, which interfered with the successful operation of the machine, and that Amberg remedied this defect by transferring the gluing operation so that the glue was applied to the strip of paper in spaced patches prior to severance of the strip paper into cup form. The continuous moving strip of paper is then severed between the spaced patches of glue. In other words, Amberg's improvement over Smith & Bild in this respect is that the former applies the glue to the strip paper prior to severance, in contrast to Smith & Bild who applied it subsequent to severance. The record undoubtedly discloses that this change in the placement of the glue materially assisted in the continuous advancement of the strip paper toward the cup forming means. Assuming that this was an inventive idea, it is difficult to perceive how its adoption by defendant would constitute infringement, in view of the fact that none of Amberg's claims calls for the glue placement prior to severance of the strip.

---

[4] 40. The method of making a conical paper cup, which comprises feeding a strip of stock along a predetermined path, successively cutting said strip substantially transversely but along a line other than straight across said strip to remove a blank having leading and trailing edges embodying complemental arcs, one of which is convex and one of which is concave, applying adhesive to the paper before commencing the forming of the cup, and forming a conical cup from a blank so severed by rolling the blank with the cup apex at a substantially intermediate part of the leading edge and in a direction such that the blank is rolled from said leading edge towards a portion of said convex arc.

4. A container making machine wherein feeding means deliver stock to forming means which shape a container and forcibly eject it into a stationary receiver for finished containers, characterized by a reciprocable member adjacent the receiver having a barb so disposed that a container margin must flex in passing said bar during the ejectory flight of the container, said member pushing the container back into the receiver on a movement in that direction.

■ Furthermore, the use of glue in paper cup forming devices was old in the art. Not only was it old, but its placement upon a paper strip prior to cutting was disclosed in Malm Patent No. 1,399,636, issued December 6, 1921. This was a machine patent for forming tubular containers, the specification of which states: " * * * In the particular mechanism here illustrated, the cement is applied to the web before the sheet is severed therefrom and the cutting device is so timed with relation to the cement applying device that the sheet will be severed at the rear end of the uncemented portion of the web. * * *" Notwithstanding that defendant, through its president, had knowledge of the disclosures of Amberg, there is nothing to preclude it from using this gluing operation clearly disclosed by the prior art.

■ As to the claims specifying means for ejecting cups, it is again argued by plaintiff that defendant is precluded from using such means in connection with other elements disclosed by Smith & Bild and other prior art patents. Again, however, we point out that the means for ejecting cups is relied upon as the inventive feature, and infringement as to these claims must be determined in connection with this feature rather than with other elements which constituted no part of Amberg's improvement. The defendant relies upon Hutt and Phillips Patent No. 537,289, issued April 9, 1895, as justification for this feature of its structure. That patent discloses a pair of reciprocating arms having detents or barbed prongs at their upper ends which engage the top of receptacles formed on the machine and push or pull them into fitted relationship with a curved chute as they are delivered from the machine. So far as we are able to discern, this is the process disclosed by Amberg. It is true, as pointed out, that the Hutt and Phillips patent does not relate to conical drinking cups, but to paper pails or buckets. The principle employed, however, is similar, if not the same, and it should not require an inventor to apply it to a machine for the manufacture of drinking cups, all other elements of which had been disclosed theretofore by prior patents. In view of the narrow issue involved, we conclude these claims are not infringed.

It follows from what we have said that the decree of the District Court is affirmed in part and reversed in part. It is affirmed as to defendant's estoppel to deny the validity of the Smith & Bild and Amberg patents, and as to defendant's infringement of Claims 9, 10, 23 and 24 of Smith & Bild. It is reversed as to its finding of validity of the Barbieri and Holman patents; as to its finding of infringement of Claims 6, 11 and 20 of the Smith & Bild patent, and as to its finding of infringement as to all the claims of the Amberg patent.