EVERETT HOLDEN AND BUD KIMBALL, APPEL-
LANTS, v. TRUCK INSURANCE EXCHANGE, A
CORPORATION, RESPONDENT.

No. 3977

December 6, 1957                    318 P.2d 1110

*Wright and Eardley,* of Elko, for Appellant Everett Holden.

*Charles B. Evans, Jr.,* of Elko, for Appellant Bud Kimball.

*Goldwater, Taber and Hill,* of Reno, for Respondent.

## OPINION

By the Court, BADT, C. J.:

Appellant Holden, a fare-paying passenger in a taxicab (one of a fleet of five) owned and operated by appellant Kimball, was injured when the taxi collided with

a telephone post. In his suit against Kimball he joined respondent, Holden's insurance carrier. NRS 706.500. Respondent's answer denied coverage. Holden filed no reply. The court granted respondent's motion for a separate trial on the issue of insurance coverage. Following a pretrial conference, at a trial of this issue before a jury, plaintiff made an offer of proof of facts in support of his contention that respondent was estopped from denying coverage. We have concluded that the trial court's rejection of this offer was error, requiring remand for trial of this issue.

Respondent issued to Kimball its policy January 21, 1953, effective to July 2, 1953, and later renewed to January 2, 1954, reciting:

"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by a specific Premium Deposit charge or charges. The limit of the Exchange's liability against each such coverage shall be stated herein, subject to all of the policy provisions having reference thereto:

| "Coverages | Limits of Liability | Premium Deposit |
|---|---|---|
| "A Bodily Injury Liability | | No. 1 |
| Each person | 5,000.00 | |
| Each accident | 10,000.00 | 189.00 |
| B Property Damage Liability | 5,000.00 | |

"Description of automobile and the facts respecting its purchase by named insured:—See Fleet."

The last reference is to a "Fleet Schedule Endorsement", which reads as follows:

"This endorsement, when countersigned by an authorized representative of the Exchange, shall be valid and form a part of policy No. 54524517 and shall supersede any prior fleet schedule endorsement attached to the policy.

"The following entries shall apply as noted below with respect to the particular automobile in connection with which the entry is made. The word 'nil' in any premium column shall mean that such coverage is not afforded * * *." This is followed by the following listing:

|  |  |  | "Premium Coverages A & B |
|---|---|---|---|
| "1 | Make of Car | Serial No. & Motor No. | 63.00 |
| 2 | Make of Car | Serial No. & Motor No. |  |
| 3 | Make of Car | Serial No. & Motor No. |  |
| 4 | Make of Car | Serial No. & Motor No. | 63.00 |
| 5 | Make of Car | Serial No. & Motor No. | 63.00" |

Kimball's first policy had been taken out with respondent July 2, 1952, on the three cabs he was then operating, being units 1, 2 and 3. (See above.) The policy of January 21, 1953 added units 4 and 5. On July 2, 1952 he had public liability and property damage insurance on units 2 and 3, not with respondent but with Lloyds of London, which policies on such risks would expire in September 1952.

In the pretrial conferences plaintiff attempted to make it clear that he advanced a number of contentions against appellant's plea of lack of coverage. One of these was estoppel. Pursuant to order made the day before the trial, that plaintiff file next morning a statement of all of his contentions, he filed such pleading including a claim that defendant was estopped from denying coverage.

Respondent contends that no evidence of estoppel was admissible because estoppel was not specifically pleaded in reply to the defense of no coverage. We may concede for the sake of argument that such was the rule before the adoption of our rules of civil procedure. However, under Rule 7(a) NRCP[1] no reply was required to enable plaintiff to contend that the defendant company was estopped to deny coverage. Dixie-Vortex Co. v. Paper Container Mfg. Co., 7 Cir., 130 F.2d 569, not only construing Rule 7(a), but also relying on Rule 8(d).[2] And

---

[1] "Rule 7(a) There shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; and answer to a closs-claim, if the answer contains a cross-claim; * * *. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer."

[2] "Rule 8(d) Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."

the court's remark there made that the defendant knew of the claim of estoppel and was not prejudiced is perhaps more applicable here than in the cited case. On the day before the trial, pretrial discussion was resumed and some 13 pages of the transcript are devoted to plaintiff's presentation of argument, citation of authorities and recital of facts in support of his reliance on estoppel to deny coverage. Mention of the possible necessity for a continuance was made but the insurance company did not request one.

At the trial plaintiff made an offer of proof substantially as follows: On July 2, 1952, when plaintiff had three cabs, he went to one Antista, then the agent for Truck Insurance Exchange, made application for complete insurance (fire, theft, public liability and property damage) on one cab, and public liability and property damage insurance on the other two when his present policies with Lloyds of London would expire on them September 1, 1952, and Antista said he would do so. He received his policy and paid his bill thinking that he was covered. Antista had authority to write such policy with insurance becoming effective at future dates. By January 21, 1953 one Lanphear had succeeded Antista as agent for the company. Kimball made application to Lanphear for complete coverage on his fleet of five cabs. After Kimball received the policy of January 21, 1953, together with the premium statement, Kimball asked Lanphear if the insurance covered all five cabs for public liability and property damage and Lanphear said that it did. In the last part of February or the first of March, 1953, the fleet having, as noted, been increased from three to five, Kimball called on Lanphear and asked why the public liability and property damage premium for the last *two* cabs was greater than the premium for the first *three* cabs. (The last premium bill paid by Kimball was $444.55. The first bill on the three cabs was $189. Respondent points out that $189 is simply three times $63, the public liability and property damage premium on each of the three units, Nos. 1, 4 and 5, and that

$444.55 is simply the sum of $189, $19 for fire and theft, and $236.55 for collision. While this supports respondent's contention of lack of ambiguity, it does not address itself to the question of estoppel.) Lanphear checked his file and said he didn't know but would find out. Kimball asked if he was covered for public liability and property damage on all five cabs and Lanphear said he was. Then Lanphear wrote Truck Insurance Exchange indicating that Kimball thought all five cabs were insured against public liability and property damage and asking to be advised. He wrote: "On the original policy *of three cars the charge for P L and P D* was $63.00, and on these two additional cars the charge was $126.00. * * * Please let me know as soon as possible what the status is so that I may advise him." (Emphasis supplied.) The company replied that the last two cabs (units 4 and 5) were so insured but only one of the first three, but did not advise Kimball or instruct Lanphear to advise Kimball and Kimball was never so advised. He thought he was covered and so purchased no additional insurance. He paid all premium statements sent him.

We have not recited the offer in detail, but sufficiently to indicate why in our opinion it should have gone to the jury on the issue of estoppel. McPhail v. Pacific Indemnity Co., 79 Cal.App.2d 675, 180 P.2d 735; United States Quarry Title Co. v. Massachusetts Bonding and Insurance Co. (C.C.A. 6th Circuit), 71 F.2d 400. This being so, it was also error for the court to grant defendant's motion for involuntary dismissal.

Other points raised by appellants do not require discussion. Reversed with costs and remanded for further proceedings.

EATHER and MERRILL, JJ., concur.