## CASCO PRODUCTS CORPORATION v. SINKO TOOL & MFG. CO.

### (two cases).

### Nos. 7261, 7263, 7262.

Circuit Court of Appeals, Seventh Circuit.
Dec. 6, 1940.

Rehearing Denied Dec. 31, 1940.

Henry M. Huxley, of Chicago, Ill., and Thos. J. Byrne, of New York City, for appellant.

Russell Wiles, Bernard A. Schroeder, and Geo. A. Chritton, all of Chicago, Ill., for appellee.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

These three causes involve appeals from three decisions of the District Court dealing with patents upon cigar lighters consolidated here for hearing and disposition. In 7261 plaintiff sought specific performance of a license agreement to defendant as to all cigar lighters manufactured by defendant in accord with the licensed patents, there being involved necessarily the question of whether defendant infringed the patents and a prayer that the fixed prices prescribed by the license be adhered to. An order granting a preliminary injunction was reversed by this court in Sinko Tool & Manufacturing Company v. Casco Products Corporation, 7 Cir., 89 F. 2d 916, upon the ground that the evidence did not justify a temporary injunction. Upon trial the District Court found no infringement and dismissed the complaint

for want of equity. From that judgment, plaintiff appeals.

In 7262, plaintiff complained of infringement of certain patents not covered by the license. The District Court held them invalid and from the resulting decree in favor of defendant, plaintiff appeals.

In 7263, defendant appeals from a decree entered in the District Court upon its counterclaim in the original cause in which was asserted infringement by plaintiff of defendant's patent to Zecchini 1,437,701. The court held the patent invalid and dismissed the counterclaim.

We previously held defendant estopped to deny the validity of the patents under which it was licensed. The true extent of that estoppel is most material. The position of plaintiff is, in substance, that if any of the devices manufactured by defendant read upon any of the claims of the licensed patents, infringement exists. Defendant insists on the contrary that claims should be treated precisely as they would be in any infringement suit, with resulting refusal by the court to enter a decree on any claim found invalid for want of invention.

In Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 120, 69 L.Ed. 316, the Supreme Court adopted the language of Justice Lurton of the United States Circuit Court of Appeals for the Sixth Circuit, Noonan v. Chester Park Athletic Co., 99 F. 90, as follows: " 'It seems to be well settled that the assignor of a patent is estopped from saying his patent is void for want of novelty or utility, or because anticipated by prior inventions. But this estoppel, for manifest reasons, does not prevent him from denying infringement. To determine such an issue, it is admissible to show the state· of the art involved, that the court may see what the thing was which was assigned, and thus determine the primary or secondary character of the patent assigned, and ·the extent to which the doctrine of equivalents may be invoked against an infringer. The court will not assume against an assignor, and in favor of his assignee, anything more than that the invention presented a sufficient degree of utility and novelty to justify the issuance of the patent assigned, and will apply to the patent the same rule of construction, with this limitation, which would be applicable between the patentee and a stranger.' "

Perhaps we should hesitate to enlarge upon this. Despite some trepidation, however, we assert the corollary rule to be that defendant is estopped to assert that patents under which it is licensed merely follow the teaching of the prior art, for to do so would invalidate that which it has covenanted is valid; but that, by the same token, defendant is not estopped to prove that its devices are built wholly according to the teaching of the prior art and that everything necessary to their conception and construction was taught by such art, for such proof clearly negatives infringement. In other words if everything in defendant's construction was taught by the prior art and nothing included therein other than the application of such art, plus ordinary mechanical skill, then the mere fact that the device constructed reads upon the claims of patents, the validity of which it is estopped to deny, does not spell infringement. Our conception of our obligation, therefore, is that we must examine the prior art not only to determine the scope of plaintiff's invention but also to determine whether what is built by defendant springs entirely therefrom. The defendant's position is that its devices intentionally follow its earlier patents and that those patents taught defendant everything necessary to the conception and construction of its devices.

Defendant's "standard equipment" it is charged, infringes Cohen 1,710,531 granted April 23, 1929, Copeland 1,919,159 granted July 18, 1933, and Cohen 1,944,922 granted January 30, 1934, and Cohen 1,944,924 granted January 30,. 1934. In the first of these defendant ·is said to infringe Claim 17.[1]

As in all examples of the art the patentee in this claim prescribes a holding device and an igniter unit. The former contains a post member which is electrically grounded on the frame of an automobile. The igniter includes a slit sleeve, the open

---

[1] Claim 17. In an electrical device of the class described, a holding device and an igniting device adapted to be supported on the holding device for quick removal, one of said devices ˉhaving a plug forming a contact member, and the other having a socket to receive the plug and including a sleeve forming a contact, an integral portion of one of said devices being normally biased to resiliently engage the surface of the other of the devices to frictionally hold the plug member in the socket with the plug in electrical engagement with the sleeve of the socket.

arms of which are bent inwardly, and a flange connected to the outer end of the resistance element. When the igniter element is placed in position, the sleeve holds it by frictional pressure. Though there results electrical continuity, the circuit is not closed until the igniter unit is pushed inwardly in the socket to make proper electrical contact. The patentee, by using the resilient sleeve, avoids grooves and projections. Under the claim it is essential that the element which receives and supports the removable element or the cooperating part of the lighter itself shall have an integral portion "normally biased to resiliently engage" the other. The patentee does not define the word "biased" but, upon examination of the elements which supply the resilient engagement, it is easily ascertainable that the metal sleeve in the lighter is so slotted as to form elastic tongues which are sprung inwardly to clasp the stationary fixed plug with an elastic pressure. We conclude this is the sense in which the patentee used the word "biased."

In his earlier patent, Zecchini had a socket and a removable plug lighter. In order to achieve the frictional elasticity necessary to hold the plug in place, he employed two spring pressed pins which were mouted in the socket and bore directly on the outside of the removable lighter's outer shell. Thus, it will be seen that Zecchini has a spring pressed part. If Cohen differed, he must have done so by his specification of "integrality." Otherwise he reads upon Zecchini. Defendant may use Zecchini's element but it may not use Cohen's, unless it was taught by the prior art. The device complained of employs a non-integral spring pressed pin as did Zecchini. Its pin, however, is in the plug instead of the socket, but the teaching of the claim is that the socalled biased portion may be placed on either member.

Other earlier patents had employed spring pressed pins and still other integrally formed biased friction fingers. Every mechanic appreciates full well the efficiency of spring fingers as agencies to retain an inserted part. Defendant's reference to such members used for holding chimneys on lamps is pertinent. Discussing the same, the court in Carlton et al. v. Bokee, 17 Wall. 463, 468, 84 U.S. 463, 21 L. Ed. 517, 518, 519, said: "The allegation of the complainants that the defendant uses Reichmann's invention of peripheral springs * * * around the edge of the dome * * * for steadying his chimney we regard as fallacious. The transformation by a mere trick of words and vague generalities of the arms or supports used by Reichmann to sustain his chimney into peripheral springs may be ingenious, but it cannot stand the test of sober consideration."

■ Cohen's device is simpler than Zecchini, and the same is true of the lighter of defendant complained of. But we think the desired simplicity merely the development of mechanical skill and, after considering all the evidence, conclude that everything done by defendant in this respect was suggested by the prior art.

Plaintiff also asserts infringement of Claims 19 and 20 of Copeland 1,919,159, by defendant's standard equipment.[2] Copeland built an electric lighter for desk use, the inserting element resting in a cone resembling a golf tee, the top being the shape of a golf ball. It was essential of course, to get current into the removable plug from the bottom and Copeland prescribed a method of so doing. Claim 19 calls for a body with a cavity open at one end, a resistance heater in the cavity and "a contact at the mouth of the cavity for removable engagement with a contact on the holding device" to carry the current to the

[2] Claim 19. A cigar lighter comprising a body having a cavity open at one end of the body; a heating element located in said cavity and being accessible for engagement with a cigar or cigarette to ignite the end of the same; and a contact at the mouth of the cavity for removable engagement with a contact on the holding device to connect the heating element to a source of E. M. F. to heat the element and prepare the latter for the light of a cigar or cigarette.

Claim 20. An electric cigar lighter comprising a holding device; a removable translating unit adapted to be removably supported on the holding device; a resistance element; a circuit for the latter including a source of E. M. F., a pair of contacts on the holder, and a cooperating pair of contacts on the unit; at least one of said contacts being movable into electrical engagement with another contact after said pairs of holder and unit contacts are electrically engaged and as a result of the continued movement of the translating unit in a straight line relative to the holding device.

heating element. This contact at the mouth, plaintiff insists, supplies "a better engagement" with the co-operating terminal in the holding device. Again we refer to the prior art to determine in just what particular Copeland differed from and improved upon its devices. Only thus can we ascertain his true scope.

We find in Zecchini a body at the end of which there is an open cup forming a cavity in which there is a heating element one of whose ends is attached to the cup. The difference in this respect between Copeland and Zecchini is that the former's body is of nonconducting material. Consequently he employed a separate contact at the mouth by the flange he illustrated. Either his claim must be restricted to a contact apart from the body and the cavity or it will read upon Zecchini, who as we see, has a body, the end of which is a metallic cup which constitutes the end of the body, the cavity and the contact all in one. Defendant's device follows Zecchini in this specification, employing a metal cup which serves all three proposed purposes. At its base is a half-sphere cup supplying the cavity taught by Zecchini and therein lies the resistor spiral, made unitary at its outer end with the cup so that the latter becomes the contact. Copeland's invention in his Claim 19, to include any variation from the prior art, must lie in his apparent limitation of separate parts. As contrasted with this everything defendant did was taught by the prior art.

In Claim 20 appears the ordinary "translating unit" which we have previously held must be defined in this art as a heater. Heat is produced by the resistance element. The latter is the active part of the translator. The claim, therefore, was not aptly drawn as it called for a translating unit and a resistance element. The latter is obviously an essential part of the former. In Copeland's lighter the resistance element is in the cavity in one end. This contacts in the center with the pin and at the mouth of the cavity with the metal flange. The claim differs from the prior art in prescribing two contacts on the translator, two on the base, with which the first two initially contact, and another which closes

the circuit in the base after the first two pairs are connected. Zecchini prescribes substantially the same operation electrically and mechanically. The difference is extremely narrow and must lie in the rigid fixation of all the parts of Copeland's translator. Defendant follows Zecchini's art in that it employs no rigid element which has fixed contacts and which moves as a whole. Copeland closes the circuit in the base outside the lighter by physical movement of the entire rigid element, which he designates the translator. Zecchini closes it within by telescoping the removable element, thus producing electric connection. In this respect defendant follows Zecchini. It closes the circuit by telescoping as did Zecchini, whereas Copeland does so by moving bodily the entire lighter. In Copeland the resistor moves downwardly and supplies the agency to bring about closure of the circuit. In defendant's lighter, as in Zecchini, the heating element stands still when the lighter is placed in the socket. It does not include the further downward movement prescribed by Copeland. When we consider the scope of this claim and interpret it so as to constitute a patentable change over Zecchini, we find that it likewise differs from defendant's device. The language we used in the Automatic Devices Corp. v. Sinko Tool & Mfg. Co., 7 Cir., 112 F.2d 335, 340, is pertinent. We there said:

"We think the claims do not read upon the accused device in that defendant's heating member after insertion is not movable on a support to a position where the heating unit is energized. Plaintiff stresses the distinction between the heating member and the heating unit. * * * It argues, therefore, that any movement of any part of the heating member after insertion, such as a thrust of the push button, is in fact a movement of the heating members within the meaning of the claims. We cannot accept this interpretation."

Defendant's device is within the lessons of the prior art and does not infringe.

In Cohen 1,944,922, likewise charged to have been infringed by defendant's "standard" equipment, Claim 6 [3] is relied upon.

---

[3] Claim 6. A heating element for cigar lighters comprising a spiral coil of high resistance wire; a pin to which the inner end of the wire is secured; a mica plate having a hole adapted to snugly fit said pin, the spiral coil being supported on said mica plate; a supporting plate having a passage for the pin substantially larger than the diameter of the pin and having a dished portion adapted to snugly fit said mica plate; and means for holding the mica plate in said dished por-

It has to do with the support of the heating element of the lighter, and the pertinent details relate to assembly of the igniter resistance coil, the center contact post, the prescribed mica washers or discs, the metal plate supporting the mica washer, the prevention of contact between the post and the plate resulting in a short circuit. Cohen prescribes a flat metal plate, slightly dished in the middle and containing an opening in the center. In the dished portion is an insulating mica washer, containing a hole in the center somewhat smaller in diameter than that in the plate. This washer fits closely into the depression and through the opening in it runs a pin which the washer keeps out of contact with the hole in the plate. On the opposite side of the plate lies another mica washer. All these parts are held together firmly by a nut on the pin, the front of which is attached to the inner terminus of the resistance coil which rests upon the washer.

Did Zecchini, who was earlier, teach what defendant did? In three particulars Zecchini and Cohen differ. First, Zecchini does not specify mica washers. But he prescribes insulating washers. The latter is the more comprehensive term and includes mica, one of the class. The public was taught by Zecchini that the washer should be insulating and defendant's choice of mica was merely the exercise of mechanical[4] discretion. Insulating material being suggested and it being public knowledge that mica was a superior insulating matter, defendant by choosing that substance, merely followed the prior art. The fact that it may reflect the heat is only incidental to the choice of the better kind of insulation.

In the second place, Zecchini has three washers instead of two. He places the additional washer beneath the heating element. He installs on his pin, in order, a nut, an insulating washer, a metal supporting part, the perforation of which is larger than the pin, an insulating washer and finally a flange on the pin. Then Zecchini supplies another washer and finally the resistance coil carried by the pin. Cohen and defendant omit one of Zecchini's washers.

We do not deem defendant's omission of one washer beyond Zecchini's teaching. Any electrical mechanic building a device following Zecchini and finding it possible mechanically to dispense with one of Zecchini's washers might do so without infringement of a later patent which does the same thing.

In the third place Zecchini does not employ the supporting plate or a dished depression therein as does Cohen. He utilizes rather a cup, deeper than the insulating washer, the latter of which does not fit into the cup in the sense in which Cohen's washer occupies his shallow depression. Perhaps this difference was the basic reason for allowance of Cohen's application. Cohen makes possible a more facile assembly and it may well be that the Patent Office attributed to him invention because of his inclusion of this specific element.

■ Defendant's device includes a metal cup, almost a half-sphere in form, connected by metal arms to a central part. Defendant employs Zecchini's pin, mounts it in the latter's manner and uses insulating washers made of mica. The construction reads upon Zecchini except for the use of mica and the omission of one washer. If Cohen's invention lay in his specification of a dished plate and the consequential easy assembly, clearly, defendant's device does not infringe, for it does not include this element, but rather follows everything that Zecchini taught. We said in the former appeal that the scope of Cohen's invention was extremely limited and that upon the evidence then submitted infringement was not clearly shown. We believe the present record shows no infringement.

■ Cohen 1,944,924 covers a lighter with an outer body of translucent material which, when the heating element is in operation and because of such operation, exhibits light through the body, causing it to glow and thus notifies the operator that the lighter is ready for use. The use of transparent or translucent material to indicate to the operator of an electrical device that a certain desired stage of heating has been

---

tion to space the pin from the edge of said passage in the supporting plate to electrically insulate the pin from said supporting plate.

[4] Mica is generally recognized as the most superior insulating material known to the art, that which is imported from India being the best. * * * All grades

of muscovite (white) mica are considered suitable for electric heating appliance. Mica sheets and washers are used in electrical apparatus and appliances in almost innumerable shapes. Standard Handbook of Electrical Engineering, p. 304.

reached is old. Indeed it would seem to be the expedient of a skilled artisan, dealing with devices where such an expedient is deemed desirable. Then, too, other patentees had suggested the idea in many applications. But the Patent Office granted the patent and we are interested only in the scope of the invention. In view of the crowded art it must be limited narrowly to the specific suggestions. As we said upon the earlier appeal, the novelty of Cohen is in the glowing of the entire outer body as distinguished from the glowing of a limited portion as in the prior art. Defendant, in the device complained of, does not follow the teachings of Cohen in this regard; rather only about five per cent of the area of its body can receive and throw off light. The remaining ninety-five per cent is opaque. What defendant did, it learned from the prior art; there is no infringement.

Thus far we have discussed the alleged infringement by defendant's standard equipment. Defendant's accessory devices, under the license agreement, must be sold by defendant at an agreed price and marked with appropriate patent markings. As to some of the devices complained of, such as exhibit 16, defendant concedes that its device is within one or more of plaintiff's patents and is willing to put thereon the markings for such patents, but it refuses to apply all markings of patents demanded by plaintiff. As to one lighter it is unwilling to apply any markings on the ground that it is entirely beyond any of the patents. It claims also that it is illegal to agree directly or indirectly to maintain a price on any devices manufactured under invalid patents.

The device which defendant refuses to mark at all is known in the record as lighter 13. It is alleged to infringe Cohen's 1,710,531 which we have already discussed. The equipment previously under consideration, however, is of different construction than that of lighter 13. The claims relied on are 8,[5] 12[6] and 17. The lighter complained of includes a bracket clamped to an instrument board of an automobile on which is a metal post electrically grounded to the frame of the car by means of the bracket. In the center of the post is an insulated electrical contact. The post has a groove around its lower part and is enlarged beyond the groove. The removable lighter contains spring arms made of sheet metal cut and bent to form the four arms which, being bent inwardly when mounted, clasp the post and snap into the groove on the latter to hold the lighter firmly in position. When the lighter is pushed forward to close the circuit, the arms rise up on the enlargement of the post next to the bracket and, when the lighter is released, by spring action, return the lighter backwards to a normal position to break the circuit. Cohen makes no claim to such interlocking means.

In this respect defendant follows what Langos taught in two earlier patents 1,697,-686 and 1,719,228. The difference between the post of Langos and that of defendant involves merely mechanical skill. Langos employed spring arms, operating in identical manner. Defendant learned everything it needed from Langos in this detail. It does not infringe. Defendant does not employ Cohen's slit sleeve.

Cohen 1,944,923 has to do largely with details of bracket construction. Claims 2 and 4 are relied upon.[7] Claim 2

[5] Claim 8. In an electrical device of the class described, a removable igniting unit adapted to be supported by a holding device comprising a post-like projection, the igniting unit having a hole to receive the projection when the igniting unit is placed on the holding device, and a slit sleeve carried by the igniting unit adapted to engage the projection to frictionally hold the igniting unit on the projection without the use of interlocking devices or detents.

[6] Claim 12. In an electrical device of the class described, a holding device and an igniting device adapted to be supported on the holding device for quick removal, one of said devices constituting a plug, and the other constituting a socket to receive the plug and having a slit sleeve to engage the plug member and frictionally hold the plug member in the socket.

[7] Claim 2. A holding device for cigar-lighter igniting units comprising a U-shaped bracket having front and rear vertically extending arms; a post secured to the front arm and adapted to removably support an igniting unit; an escutcheon plate on said post; a contact on said post; and a pig-tail secured to said contact, said pig-tail being covered with insulating material and being adapted to extend rearwardly through said post, said post and bracket being provided with clearance passages to permit said pig-tail to extend between the instrument-board and the escutcheon plate.

Claim 4. A holding device for a cigar-lighter igniting unit comprising a U-

obviously refers to means of mechanical assembly. Upon examination, we find defendant's device quite at variance therewith; it involves no such structure as the claims prescribe. Rather the bracket is so constructed as to form a bump to position the post, the latter being merely a sheet metal cup set over the bump. The details prescribed by Cohen do not appear in defendant's construction. This patent is not infringed by exhibit 13.

Exhibit 14 is said to infringe Cohen 1,-710,531 in its releasable connection between the lighter plug and its supporting device. It utilizes a hollow tubular support of stiff metal containing bayonet slots so that plugs with suitable elevations can be inserted and fixed in place. This stiff tube is not equivalent to the elastic arms essential to Cohen. The plug is held by ordinary friction fit. Such an element may be less facile and less efficient in operation, but it certainly is not the equivalent of Cohen. Rather it follows the ordinary teaching of mechanics.

Exhibit 15, another of defendant's accessory devices, is said to infringe Cohen patents 1,710,531, 1,710,348 and 1,944,923 and Copeland 1,919,159. For the reasons stated in discussing other devices we conclude that 1,710,531 is not infringed by defendant but that defendant learned all it needed to learn in order to conceive and build its device from Langos. Defendant employed no sleeve but arms cut or stamped from a flat plate, as previously pointed out.

■ Nor do we believe there is infringement of 1,710,348. It applies only to devices containing a "deep" cavity. Defendant employs only such a cavity as Zecchini and other earlier delvers in the art had disclosed.

■ We have previously discussed Cohen 1,944,923 in connection with plaintiff's exhibit 13. For reasons previously indicated, we find no infringement in exhibit 15. Nor does this exhibit infringe Copeland 1,919,159, when the latter is properly construed in order to preserve it as inventive over the prior art.

In exhibit 16 defendant follows Cohen 1,944,924 and is within the license agreement. Indeed, defendant has complied with its contract and paid royalty. The question now is whether marking of other patents should be placed thereon, plaintiff insisting that the device should bear four patent numbers instead of merely Cohen 1,944,924. For reasons heretofore indicated, we think there is no infringement of any other patent and that the present marking is in compliance with the license agreement. Without further extending this discussion, we agree with the District Court's conclusions with regard to all accessory equipment.

■ In 7263, plaintiff appeals from a decree finding invalid its patents, Morris 1,376,154, Hammond 1,620,548 and Cohen 1,944,925. Two claims of the Morris patent are relied upon. Claim 1 we consider clearly invalid. The patentee's basic idea was that of a lighter placed in a holder from which it derived heating current and from which it could be removed for use when sufficient heat had been generated. The prior art discloses many examples of such practice; indeed, the whole conception might well be held within the ordinary skill of an artisan skilled in the electrical industry.

Claim 2 is directed to a spring and bayonet plug method of interlocking the plug in the socket. The patentee claims "a spring for holding said member on the socket out of electrical connection with one of the terminals." Concerning this the patentee says that the projection on the plug will be twisted against the inclined wall of the groove in the socket member and "will, under the action of the spring, be held against the inclined wall" at the outer end of the lateral groove, the friction between the projection and the inclined wall being sufficient to prevent the removable plug being accidentally disconnected from the stationary socket member. Thus the lighter may occupy either of two positions while in the socket. In one of these one pair of contacts is disengaged. In the other it is in full contact. Spring and bayonet lock

---

shaped bracket having front and rear vertically extending arms, the former being adapted to lie against the front face of an instrument board and the portion between the front and rear arms being adapted to lie against the lower edge of the instrument board; and means on the front arm adapted to removably support an igniting unit, said bracket being provided in its front arm and the portion between the front and rear arms with vertical and longitudinal wire clearance passages respectively, so that a current supply wire leading to said means may lie adjacent the instrument board.

arrangements are old and Morris' method of circuit closing is the same as other familiar connections in the electrical art. Morris merely made selection of a particular type of circuit closure. Both claims we deem invalid for want of invention.

■ Claim 2 of Hammond makes no contribution other than the suggestion of an opening in the handle through which the heating element can be viewed in order to determine when it is hot enough. As we have previously remarked, there was nothing novel in this. The idea of provision of an opening for the purpose of viewing a specific condition is as old as any human practice. His claim 9 employs a cam-shaped spring operating in a depression to control the position of the lighter in the socket. Its other contributions are exhibited in prior patents. Obviously, the use of a cam spring is known to all mechanics and Hammond's selection of that type reflects merely mechanical selection. Both claims are invalid for want of invention.

■ In Cohen 1,944,925, the patentee claims a cigar lighter with a hollow shell-like body of translucent material, containing a heating element which, when sufficiently hot, gives off light through the body, causing it to glow in its entirety. As we have previously observed, it was old to provide a transparent or translucent element to disclose sufficient heating. The alleged novelty of Cohen is the glowing of the entire body as distinguished by the limited glowing of a limited portion in the prior art. This idea does not supply the essentials of invention. Different expressions of the same thought appear in many prior patents and are thought to be common to all mankind.

Claim 3 includes the idea of removability of the element from the plug and the use of a hollow handle. These have no relation each to the other. They are in no sense a true combination. The hollow in the handle will work equally well if the element is firmly fixed in the plug and the removable element will perform the same function as when the handle is solid. This results in mere aggregation.

■ In 7262, defendant appeals from a judgment of the District Court dismissing, for want of equity, defendant's counter-claim for infringement of claims 1, 2, 3 and 4 of Zecchini 1,437,701. The District Court held the patent invalid and defendant insists now that Zecchini did make an inventive contribution properly covered by these claims. The District Court in the course of its opinion, said:

"Counsel for defendant in the argument makes much of the fact that 'Zecchini made the important discovery that by utilizing a flat metal strip wound into a spiral, instead of using the round wire formerly used, a small compact resistance element would be provided which could be heated without waste of electric power and that it would stay heated for a sufficient length of time to enable the current to be shut off while the plug was removed from the socket to light a cigar.'"

"Unfortunately, if Zecchini considered this an important discovery, he did not include it in his claims, and therefore, it was not patented. And in other respects, as I have stated, his lighter does not differ in any particular respect from the prior Morris patent."

As has been observed the patent relates to a wireless type of cigar lighter, consisting of a holding device and removable igniter unit, the latter being provided with two contacts. Electrical continuity is not complete until the second contact is made, which results from depression. Thereupon the igniter resistance element becomes heated and the igniter unit may be removed for lighting a cigar. The language indicates that the igniter unit is provided with means to bring the igniter coil into or out of the electric circuit. Defendant argues that invention lay in making the resistance coil out of flat wire instead of round wire. This, the District Court thought, and we agree, was not what Zecchini claimed.

Claim 2 adds to claim 1 "means holding said control means in open circuit position when the device is out of service" and Claim 3, "means controlling the circuit in which said resistant circuit is inserted, these conducting means being in circuit with said resistant part and knob-controlled spring holding said circuit open when the device is out of service." Any possible interpretation given to these claims seems to us anticipated by the prior art. Morris 1,376,154, not cited in the patent office when Zecchini's application was pending, provided a removable igniter unit with two contacts and between them and in constant electrical continuity with them, a resistance, heating or incandescent element. The circuit was not complete until the

128

igniter unit was pushed inwardly. Thereby, the circuit being closed, the resistance unit became heated. Morris did everything that Zecchini did except that the latter closed the circuit within the igniter unit, whereas in Morris' device the circuit is constantly continuous from one contact to the other of the igniter unit, and fully completed by bringing into contact and engagement, the terminal of the plug and that of the holding device by pressure against a spring in the latter. We think that in all essentials Morris taught all Zecchini has shown us. At any rate plaintiff does not infringe, for if Zecchini achieved invention he did so by prescribing closing the circuit within the plug itself. This defendant does not do.

The judgments of the District Court are affirmed.