**HALL LABORATORIES, Inc., et al. v. NATIONAL ALUMINATE CORP.**

Civ. A. No. 1192.

United States District Court
D. Delaware.

Sept. 20, 1950.

Aaron Finger and Robert H. Richards, Jr., of Richards, Layton & Finger, of Wilmington, Del., and Walter J. Blenko and James K. Everhart, Jr. of Blenko, Hoopes, Leonard & Glenn, of Pittsburgh, Pa., for plaintiffs.

Arthur G. Connolly, of Wilmington, Del., John T. Chadwell, Victor P. Kayser and Richard L. Johnston, of Chicago, Ill., for defendant.

LEAHY, Chief Judge.

On January 31, 1949, plaintiffs sought a declaratory judgment that they need to pay no royalties stipulated by the terms of a license agreement between defendant and plaintiffs under No. 2,358,222, the Fink-Richardson patent, and that the license agreement should be cancelled. Defendant then asked for summary judgment and dismissal of the complaint.

Years before, on March 17, 1945, the plaintiffs sought declaratory judgment against defendant in this court—our C.A. No. 538—to adjudicate their non-infringe-

ment and the invalidity of the Fink-Richardson patent. After negotiations the parties reached a settlement. An agreed judgment of dismissal was entered on February 10, 1948.[1] At the time of settlement inclusion was made for (1) a license to plaintiffs under the Fink-Richardson patent; (2) an agreement between the parties whereby defendant released plaintiffs and their jobbers, agents and customers from claims for past infringement, defendant was paid $10,000 and plaintiffs and defendant gave mutual releases and agreed to the dismissal of the pending litigation; (3) an agreed form of final judgment of dismissal (noted in the margin) without prejudice of the complaint and counterclaim; and (4) a covenant not to sue for infringement respecting another patent not in issue in the earlier or present case.

The license agreement granted plaintiffs a non-exclusive, non-transferrable license to practice and participate in the practice of the inventions claimed in the Fink-Richardson patent. The term of the license runs from January 29, 1948 to the date of expiration. There is no expressed right to discontinue payment of royalties prior to the expiration of the patent except in the event of an adjudication of invalidity of the Fink-Richardson patent[2] in any suit filed for its infringement or failure by the defendant to prosecute infringers.[3] The agreement recites that certain activities of plaintiffs constitute participation in the practice of the invention claimed in the Fink-Richardson patent for the treatment of incrusted water.

Under the license agreement plaintiffs made payment of royalties for three calendar quarters of the year 1948 at the royalty specified in the license agreement. Several months later they filed their complaint in the present case and asked this court to

1. "Final Judgment.

"And Now, to wit, this 10th day of February, 1948, it having been represented to the Court by counsel for plaintiffs and counsel for the defendant that the parties hereto have compromised and settled this controversy and that the defendant has granted a license to the plaintiffs under Fink and Richardson patent No. 2,-358,222,

"It Is Ordered, Adjudged And Decreed:
"(1) That the complaint herein is hereby dismissed;
"(2) That the counterclaim herein is hereby dismissed;
"(3) That each party shall pay its own costs.
"(s) Paul Leahy
"U. S. District Judge.
"Dated Feb. 10, 1948."

2. The text of paragraph 8 follows: "8. If in any suit for infringement of the Fink-Richardson patent any of its claims shall be held to be invalid or not infringed by the final judgment of a court of competent jurisdiction from which no appeal or other proceeding for review thereof can be or is taken, the construction placed upon the patent by the court shall be followed by the parties hereto from and after the date of the entry of such final judgment, and royalties thereafter accruing shall be payable only in accordance with such construction; and with respect to claims that are held in such final judgment to be invalid the obligation to pay royalties shall cease; provided, that such final judgment shall cease to have the effect set forth in this paragraph from and after the date of a subsequent final judgment of a court of equal or superior jurisdiction to the extent that such subsequent judgment shall be inconsistent therewith."

3. The text of this part of the license agreement follows: "9. Nalco shall in good faith endeavor to enforce and maintain the Fink-Richardson patent. In case the Hagan companies shall notify Nalco of an alleged infringer and Nalco shall not in good faith believe that the bringing of suit against the alleged infringer is reasonably required for the protection of the Hagan companies, the question shall be submitted to an arbitrator, whose judgment shall be final. If the arbitrator's decision be in favor of the Hagan companies, Nalco shall sue the alleged infringer, but if the decision be in favor of Nalco there shall be no obligation to bring suit against the alleged infringer under the circumstances existing and presented to the arbitrator. Nalco shall have thirty days from the date of decision by the arbitrator in favor of the Hagan companies within which to bring suit. In case it shall not bring suit within such time the Hagan companies shall be relieved of their obligation to pay royalties hereunder from the date of the decision of the arbitrator up to the date when suit shall be brought against the alleged infringer. * * *"

declare that they have been "evicted" from the benefits of the license agreement and that the license be cancelled by appropriate decree. Plaintiffs allege that their present use and practice is justified by prior art and accordingly they should not be subject to the payment of royalties under the license agreement, notwithstanding the specific provisions of that agreement. To support their position, plaintiffs now set forth certain patents and uses which they contend anticipate the alleged inventions claimed in defendant's Fink-Richardson patent. Plaintiffs rely particularly on the "Fresenius text" as it has been judicially interpreted in the decided case of Hall Laboratories, Inc., v. Economics Laboratory, Inc., D.C., 72 F. Supp. 683, affirmed 8 Cir., 169 F.2d 65. It is clear that all the prior art uses and disclosures relied on by plaintiffs, including at least one of the judicial interpretations placed on the Fresenius text, were known by plaintiffs and in existence at the time of the execution of the license agreement. In addition, defendant made the following admission: "But even assuming that their activities do correspond with the prior art (which defendant does not admit but assumes to be true only for the purpose of its pending motion), plaintiffs nevertheless are liable for the royalty, for the reason that they expressly agreed that such activities are within the scope of the license agreement."

On this record the parties urge a large number of legal arguments to support their respective positions. I have followed through their contentions and weighed each one. Defendant contends that (1) the license agreement sets forth the sole conditions under which plaintiffs may be relieved of their obligation to pay royalties and these conditions have not occurred; (2) as a matter of fact, it appears in the record that plaintiffs have not been evicted from the benefits of the license; (3) plaintiffs are obligated to pay royalties under the license agreement regardless of the prior art because the processes they now admittedly use are the same as those described in the license agreement and which form the basis of the use on which they agreed to pay royalties; (4) plaintiffs' past royalty payments operate as an estoppel of their right to discontinue royalty payments; and (5) plaintiffs are seeking to re-litigate the same issues earlier compromised and settled in the previous litigation in this court involving the same patent and inventions. It seems to me that all these reasons except (2) above are, at bottom, estoppel arguments; they will be so treated as one argument under that theory.

On the other hand, while they do seriatim deny and discuss each of defendant's arguments, plaintiffs contend mainly that this suit is controlled and should be disposed of by the doctrine of the Marcalus case,[4] and that defendant's admission that the practices upon which it exacts royalties "correspond with the prior art" brings this case within the Marcalus doctrine; and both thus operate to defeat defendant's right to summary judgment. My conclusion is that the sole issue in the case at bar is whether the doctrine of the Marcalus case can be held to defeat defendant's right to judgment here.

■ I think defendant's motion for summary judgment should be denied. The basis of the conclusion is not that I think the Marcalus doctrine controls so as to defeat defendant's right but, rather because of a doubt as to the proper construction and limitations that should be placed on defendant's admission that plaintiffs' activities "correspond with the prior art". This aspect of the case may be determined after considering the Marcalus case in some detail. Marcalus involved the question whether an assignor of a patentee is estopped by virtue of his assignment to defend a suit for infringement of the assigned patent on the ground that the alleged infringing device is that covered by a prior art expired patent. In deciding in such circumstances the assignor was not estopped, the Supreme Court stated: "It is thus apparent that the patent laws preclude the patentee of an expired patent and all others including petitioner

4. Automatic Paper Machinery Co. v. Marcalus Mfg. Co., 3 Cir., 147 F.2d 608, affirmed Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 66 S.Ct. 101, 105, 90 L.Ed. 47

from recapturing any part of the former patent monopoly; for those laws dedicate to all the public the ideas and inventions embodied in an expired patent. * * * The rights in the invention are then no longer subject to private barter, sale, or waiver. * * *

"It follows that the patent laws preclude the petitioner assignee from invoking the doctrine of estoppel, as a means of continuing as against respondent, his assignor, the benefit of an expired monopoly, and they preclude the assignor from estopping himself from enjoying rights which it is the policy of the patent laws to free from all restrictions. For no more than private contract can estoppel be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest."

At the outset it is clear there are two factual differences between the Marcalus case and the case *sub judice*. First Marcalus involved an action for infringement between assignor and assignee, whereas this is an action for royalties between licensor and licensee. Second, and more important, is the factual difference that the Court in the Marcalus case relied upon an expired patent as prior art whereas the plaintiffs here rely only on a prior scientific text.[5] While I do not consider it appropriate to rule on the question definitively at this time, my present thought is the Marcalus doctrine would not apply in the instant case for the broad basis of that decision was the public interest in the common use of the expired patent. See Lanova Corp. v. Atlas Imperial Diesel Engine Co., Del.Super., 55 A.2d 272, and Atlas Imperial Diesel Engine Co. v. Lanova Corp., D.C.Del., 79 F.Supp. 1002. If the Marcalus case is to be so limited, reference to the prior art may also be limited by the rule of estoppel to contest validity. Consequently, the doctrine of that case would not necessarily operate to defeat defendant's right here. Significantly, the Supreme Court in Marcalus specifically refused to rule on the existence or the legal abolition of the general doctrine of estoppel

when it said: "But in the circumstances of this case we find it unnecessary * * * to determine whether, as respondent asks, the doctrine of estoppel by patent assignment as stated by the Formica case [Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316] should be rejected. To whatever extent that doctrine may be deemed to have survived the Formica decision or to be restricted by it, we think that case is not controlling here. For other considerations are dispositive of this case, in which, unlike Formica, the accused machine is precisely that of an expired patent."

■ Since the Marcalus case, I have held, in effect, that the rule of estoppel of the licensee to contest validity of a licensed patent has not been abrogated. Atlas Imperial Diesel Engine Co. v. Lanova Corp., D.C. Del., 79 F.Supp. 1002. Thus, for present purposes (I do not rule on it finally) the Marcalus doctrine, as urged by plaintiffs, does not control here. The conceded factual differences call for the operation of different rules; and a clear understanding, as far as I am concerned, of the significance of these factual differences can be only understood better after a full hearing. This, then, is a good part of the obstacle to granting defendant's motion. Plaintiffs contend that defendant, for the purpose of this motion, has admitted without qualification that plaintiffs' practices "correspond with the prior art". They interpret this latter phrase to create the same situation as would be created by practices under an expired patent as in Marcalus. If this interpretation or conclusion were accepted, it would clearly minimize the significance of the factual difference which I have referred to, and which has given me pause. While I am not convinced defendant's admission goes this far, I think it raises sufficient doubt to defeat defendant's right to summary judgment.

By denying the present motion for summary judgment in defendant's favor, there will be present at trial live and informed testimony or other evidence placing plain-

5. This text—the "Fresenius text" as judicially determined—was in existence and known to plaintiff prior to the execution of the license agreement

tiffs' practices vis-a-**vis** the Fresenius text and defendant's patent because defendant has already intimated that its present admission, regardless of its proper interpretation, will not be repeated at trial but that defendant will vigorously dispute plaintiffs' contention that their practices correspond with the prior art. The problem here has been difficult and I think a better solution may be achieved against the factual background of a full and complete hearing on the issues which now remain after the disposal of the present motion. Since I have decided to deny defendant's motion for summary judgment, it becomes unnecessary to consider the number of other specific questions which have been raised.

An order denying the motion may be submitted.