**HALL LABORATORIES, INCORPORATED, The Buromin Company, Calgon, Incorporated, and Hagan Corporation, Appellants,**

v.

**NATIONAL ALUMINATE CORPORATION.**

**No. 11343.**

United States Court of Appeals Third Circuit.

Argued Nov. 1, 1954.

Decided June 22, 1955.

Rehearing Denied Aug. 8, 1955.

**304**

Biggs, Chief Judge, dissented in part.

Walter J. Blenko, Pittsburgh, Pa., Richards, Layton & Finger, Blenko, Hoopes, Leonard & Buell, James K. Everhart, Jr., Eugene F. Buell, Pittsburgh, Pa. (Aaron Finger, Wilmington, Del., on the brief), for plaintiffs-appellants.

John T. Chadwell, Chicago, Ill. (Arthur G. Connolly, Wilmington, Del., Richard L. Johnston, Victor P. Kayser, Chicago, Ill.; on the brief), for defendant-appellee.

Before BIGGS, Chief Judge, and MARIS and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from the judgment of the District Court for the District of Delaware dismissing the plaintiffs' complaint with prejudice and directing the payment to defendant of royalties, under a license agreement, which had been deposited in the registry of the Court.

The issue to be determined is whether the plaintiffs, in the circumstances of this case, are free to litigate the validity of a patent as to which they are licensees.

The plaintiffs, Hall Laboratories, Inc., The Buromin Company, Calgon, Inc., and Hagan Corporation (collectively "Hall"), affiliated companies under generally the same management, commenced this action for declaratory judgment against National Aluminate Corporation ("Nalco") seeking to be relieved of liability under a license agreement entered into on January 29, 1948, whereby Nalco granted to Hall a license under patent No. 2,358,222 ("Fink-Richardson" patent). This patent relates to the treatment of incrusting water by the addition of small quantities (one to three, and sometimes up to nine parts per million) of polyphosphoric acid compound to prevent incrustation on the walls of passageways or containers of waters. The process is known as "stabilization". There is no dispute that the practices of Hall are within the Fink-Richardson patent and the license agreement.

The facts leading to the instant litigation are as follows:

In March, 1945, plaintiffs commenced an action against Nalco seeking a declaratory judgment that their practices did not infringe the Fink-Richardson patent and that the patent was invalid. Nalco filed an answer and counterclaim charging infringement. On January 29, 1948, the parties settled the controversy. The settlement included the license agreement above referred to, a release of past infringement (Hall paying to Nalco $10,-000), a covenant not to sue on another patent, and the entry of an order of an agreed judgment of dismissal. On Feb-

ruary 10, 1948, the District Court entered a "final judgment", consented to by the parties, which recited that the parties had represented to the court that the controversy was compromised and settled, and that the defendants were granted a license. This judgment dismissed the complaint and the counter-claim, but contained no recitation as to prejudice.

Prior to the commencement of the aforesaid action, Hall Laboratories, Inc., had, in January 1945, instituted proceedings against Economics Laboratory, Inc. ("Economics") charging infringement of its patent, Re. 19,719 ("Hall" patent). Economics pleaded as a defense the invalidity of that patent citing the writings of one Fresenius. On June 13, 1947, judgment was granted in favor of Economics on the ground that there was no demonstrable distinction between the Hall patent and the Fresenius text. Hall Laboratories, Inc. v. Economics Laboratory, Inc., D.C.Minn.1947, 72 F.Supp. 683. On July 6, 1948, this judgment was affirmed in the Court of Appeals for the Eighth Circuit. 169 F.2d 65.

Nalco was not involved in the Economics litigation, nor was the Fink-Richardson patent drawn into issue.

On January 31, 1949, the plaintiffs commenced the instant action against Nalco. The complaint recites substantially the foregoing facts. It further distinguishes the Fink-Richardson patent from the Hall patent. The Hall patent relates to water softening, the process being referred to as "sequestration", and achieves its effect by adding to hard water metaphosphate in substantially larger quantities than that taught by the Fink-Richardson patent, which does not soften water. However, the complaint alleges that the Fink-Richardson patent is invalid as having been anticipated by specific prior art and patents, and by the Fresenius text as interpreted by the courts in the Economics litigation. It further alleges that Hall, as a result of the "new situation", has been evicted from the license of January 29, 1948, and accordingly prays for judgment relieving Hall from the payment of royalties.

Three royalty payments had been made by Hall to Nalco before the commencement of these proceedings.

The District Court denied Nalco's motion for summary judgment. 1950, 93 F.Supp. 376. Nalco then moved, pursuant to Rule 42(b), Federal Rules of Civil Procedure, 28 U.S.C., for a separate trial on the issue whether the plaintiffs' practices and the Fink-Richardson patent correspond with the teaching of the Fresenius text. This motion was granted. 1951, 95 F.Supp. 323. The District Court held the view that Hall was estopped to contest the validity of the Fink-Richardson patent, but permitted trial with respect to the Fresenius text, which had not been referred to by Hall in the prior declaratory judgment action brought by Hall against Nalco and which had been settled. In the exercise of its discretion, it determined that such issue should be tried, for if the decison went against Hall, it would resolve the entire controversy. Following trial, the District Court found as a fact that the Fresenius text, whether or not interpreted in the light of the Economics litigation, did not correspond with the plaintiffs' practices and the Fink-Richardson patent. It also found that Hall was estopped to contest the validity of the Fink-Richardson patent, both because of the settlement of the prior action between the parties and because of the license agreement. 1954, 120 F.Supp. 684.

In the District Court, as here, Hall relied on Scott Paper Co. v. Marcalus Mfg. Co., Inc., 1945, 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47, as applicable authority for permitting Hall to attack the validity of the Fink-Richardson patent in the circumstances stated above.

We are of the opinion that Hall is estopped to contest the validity of the Fink-Richardson patent on the ground of the prior art, including the Fresenius text, as a result of the compromise and settlement of the prior action between these same parties. J. Kahn & Co. v. Clark, 5 Cir., 1949, 178 F.2d 111, 114. In the prior action, the prior art, except Fresenius, was pleaded, but the estoppel

is created by the contract embodying the settlement and compromise and license agreement and operates uniformly on all the prior art. It is noteworthy that Hall does not distinguish between its practice at the time of the prior action and at the time of the commencement of the instant action. Moreover, at the time of the compromise and settlement of the prior action, the Fresenius text was known to Hall, as was the judicial interpretation of it, which preceded the compromise by at least six months. If Hall felt that the Economics decision jeopardized the validity of the Fink-Richardson patent, that issue could have been litigated. Hall's present suggestion that it expected the Economics decision to be reversed on appeal is without effect, since the secret mental reservations by a contracting party cannot operate to modify a freely assumed contractual obligation. Only recently, in evaluating the effectiveness of a release in a personal injury action, we said:

"True, the plaintiff is now known to have suffered to a greater extent than was previously thought. But the very nature and purpose of settlement presupposes a joint *approximation* of the future. The validity of a release is not conditioned upon the prescience of the parties." Thompson v. Coastal Oil Co., 3 Cir., 1955, 221 F.2d 559, 561.

■ In this instance, the Economics decision added an arrow to Hall's quiver, but the Hall group traded its bow in the interest of peace and profit.

We are of the further opinion that Hall as a licensee is precluded from asserting the invalidity of the licensor's patent. Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 1951, 190 F.2d 217, 220. But Hall, relying on Scott Paper Co. v. Marcalus Mfg. Co., Inc., supra, places in issue the proper scope of the estoppel doctrine, and sug-

gests overtones of policy which, if accepted, would cut across any principle preventing Hall from disputing the validity of the licensed patent.

That a licensee is estopped to show the invalidity of the licensed patent has long been an accepted part of patent law. Kinsman v. Parkhurst, 1855, 18 How. 289, 15 L.Ed. 385; United States v. Harvey Steel Co., 1905, 196 U.S. 310, 25 S.Ct. 240, 49 L.Ed. 492; Automatic Radio Mfg. Co., Inc., v. Hazeltine Research, Inc., 1950, 339 U.S. 827, 836, 70 S.Ct. 894, 94 L.Ed. 1312. Its basis has been explained by Mr. Justice Frankfurter, dissenting in MacGregor v. Westinghouse Electric and Mfg. Co., 1946, 329 U.S. 402, 413, 67 S.Ct. 421, 426, 91 L.Ed. 380, in the following terms:

"What we here have to decide is whether we shall allow the licensee to repudiate an agreement for the payment of money made in an arm's length transaction. For nearly a hundred years this Court has uniformly answered that question by using the legal shorthand of estoppel."

The terminology of estoppel by sanction of tradition rather than strictly logical appropriateness has been employed to designate the truth that a contract involving a patent is as binding as any other contract.[1]

Considerations of public policy, however, transcend private bargaining and the traditional doctrine. Thus, in Sola Electric Co. v. Jefferson Electric Co., 1942, 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, the Supreme Court held the licensee not estopped to attack the validity of the licensed patent where the license agreement price fixing provisions would violate the anti-trust laws if the patent were invalid. See also Mercoid Corp. v. Mid-Continent Investment Co., 1944, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Katzinger Co. v. Chicago Metallic Mfg.

---

1. In the case of the "estoppel" of an assignor of a patent to contest the validity of the assigned patent, the use of the term can be justified logically as an ap- plication of the real property doctrine of estoppel by deed. See Automatic Paper Machinery Co. v. Marcalus Mfg. Co., 3 Cir., 1945, 147 F.2d 608.

Co., 1946, 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374; MacGregor v. Westinghouse Electric and Mfg. Co., supra. And in Scott Paper Co. v. Marcalus Mfg. Co., Inc., supra, it was held that the assignor of a patent sued for infringement was not estopped to attack its validity by showing that the invention had been described in a prior expired patent. The Supreme Court, in that case said, 326 U.S. at page 257, 66 S.Ct. at page 105:

> " * * * the patent laws preclude the petitioner assignee from invoking the doctrine of estoppel, as a means of continuing as against respondent, his assignor, the benefit of an expired monopoly, and they preclude the assignor from estopping himself from enjoying rights which it is the policy of the patent laws to free from all restrictions. * * * The interest in private good faith is not a universal touchstone which can be made the means of sacrificing a public interest secured by an appropriate exercise of the legislative power. The patent laws preclude us from saying that the patent assignment, which they authorize, operates to estop the assignor from asserting that which the patent laws prescribe, namely, that the invention of an expired patent is dedicated to the public, of which the assignor is a member."

The crucial extension which Hall seeks to make is that the doctrine of the Scott Paper case is not restricted to situations in which invalidity of the patent in issue is premised upon a prior expired patent. In brief, Hall asserts that the laws which dedicate to public use the invention of an expired patent also dedicate the disclosures of prior publications and foreign patents for which timely patent application has not been made. Hall concludes that there is no basis for distinguishing between invalid patents on the grounds of their invalidity insofar as the Scott Paper case is concerned, and he relies upon language in the opinion of this court in Automatic Paper Machinery Co. v. Marcalus Mfg. Co., 3 Cir., 1945, 147 F.2d 608, affirmed *sub nom.* Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47.

It does not appear, however, that the Supreme Court has as yet relaxed the estoppel doctrine to this extent. In Katzinger Co. v. Chicago Metallic Mfg. Co., supra, decided subsequent to the Scott Paper case, the Supreme Court, in allowing the licensee to challenge validity, refused to re-examine the estoppel doctrine as embodied in the Kinsman and Harvey Steel cases, supra. In resting its decision upon the anti-trust aspect of the case, the Court specifically left open "under what other circumstances a federal rule of estoppel might be applied." 329 U.S. at page 399, 67 S.Ct. at page 419. As of 1946, therefore, the estoppel principle was not moribund. Any doubt is removed by Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 1950, 339 U.S. 827, 70 S.Ct. 894, 94 L. Ed. 1312, in which the Supreme Court held the licensee estopped to contest the validity of the licensed patents. In unmistakable language the traditional doctrine was reiterated, 339 U.S. at page 836, 70 S.Ct. at page 899:

> "Finally, it is contended that notwithstanding the licensing agreement, petitioner-licensee may contest the validity of the patents it is charged with using. The general rule is that the licensee under a patent license agreement may not challenge the validity of the licensed patent in a suit for royalties due under the contract. United States v. Harvey Steel Co., 196 U.S. 310, 25 S.Ct. 240, 49 L.Ed. 492. * * * The Katzinger and MacGregor cases are inapplicable. The general rule applies, and petitioner may not, in this suit, challenge the validity of the licensed patents."

Nevertheless, Hall attempts to render its practices royalty-free upon Casco Products Corp. v. Sinko Tool & Mfg. Co., 7 Cir., 1940, 116 F.2d 119, certiorari denied 1940, 312 U.S. 693, 61 S.Ct. 713, 85 L.Ed. 1129; and see the alternative basis for our decision in Automatic Paper

Machinery Co. v. Marcalus Mfg. Co., 3 Cir., 1945, 147 F.2d 608, 610–612. These cases are the product of Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 1924, 266 U.S. 342, 351, 45 S.Ct. 117, 120, 69 L.Ed. 316. The latter case involved a suit for infringement against the assignor of a patent. While recognizing that the assignor was estopped to contest the validity of the patent, the Supreme Court, in accordance with existing law, held that the prior art may be used to construe and narrow the claims of the patent "conceding their validity". We said, in the Automatic Paper Machinery case that complete anticipation might be shown. In affirming our decision, *sub nom.* Scott Paper Co. v. Marcalus Mfg. Co., the Supreme Court did not rely upon our alternative holding.

It was not the purpose of the Formica case to nullify contracts with respect to the licensing of patent property. Indeed, the decision recognizes the co-existence of the estoppel doctrine; the distinction between attacking validity and construing and narrowing claims was characterized as a "nice one but seems to be workable". 266 U.S. at page 351, 45 S.Ct. at page 120. Neither that decision nor our own was predicated upon an overriding public policy. Rather, the Formica decision was designed to meet the situation where some doubt existed between the parties as to the true scope of the patent claims. In the instant case, there is no pretense of doubt concerning the claims of the Fink-Richardson patent, nor are the parties hereto disputing infringement.

All of the offered prior art, except Fresenius, was alleged in the prior declaratory judgment action brought by Hall against Nalco. The effect of the compromise of that suit, of which the license agreement was a part, was to settle for the parties the question of the relevance of the prior art. Hall has effectively laid to rest the question of the validity of the Fink-Richardson patent, insofar as the prior art is concerned, and its applicability to its practice, which even now is conceded to be that of the Fink-Richardson patent. By the same token, the applicability of the Fresenius text, even as interpreted by the federal court in Minnesota, was known to Hall before the settlement, and Hall chose to lay it aside as well.

Consequently, this case does not present a proper basis for the application of the Formica rule.

■ Except for a disclosure which came to light on this appeal we should be obliged to affirm the judgment of the District Court for the reasons stated. It now, appears, however, that three patents relied upon by Hall, and referred to in the complaint in this action, as anticipating the Fink-Richardson patent, expired prior to the filing of the District Court's opinion on March 24, 1954. These are Judson, No. 1,924,861, issued August 29, 1933, Burk, No. 2,063,788, issued December 8, 1936, and Rosenstein, No. 2,038,316, issued April 21, 1936. It is clear that under the Scott Paper case these patents would have had to have been considered had they expired at the time of the filing of the complaint, for that decision presupposes that the parties cannot by any form of agreement contravene the statutory policy which terminates the patent monopoly after the stated interval. Hall should have amended its complaint accordingly, but its failure to do so is not fatal, since the Rules permitting amendments are liberally applied, and since the Scott Paper case leaves an open avenue. The issue, whether the expired patents correspond with Fink-Richardson, remains and the record will not admit of final decision of that issue in this Court.

For the reasons stated, the judgment of the District Court will be vacated and the cause remanded for further proceedings not inconsistent herewith.

BIGGS, Chief Judge (dissenting in part and concurring in part).

The majority opinion holds that because of the compromise agreement of the first declaratory judgment suit by Hall and Nalco (Delaware C.A. 538), because of the license issued thereunder to Hall

authorizing it to employ the processes of the Fink-Richardson patent in issue and because of the "final judgment" of the court below dismissing the suit on stipulation of Hall and Nalco, the court below on remand can consider, under the Marcalus doctrine of the Supreme Court, Scott Paper Co. v. Marcalus Manufacturing Co., Inc., 1945, 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47, *only* whether the Judson Patent, No. 1,924,861, the Burk Patent, No. 2,063,788, and the Rosenstein Patent, No. 2,038,316 (all of which expired prior to the entry of the judgment appealed from) can be employed to limit the claims of the Fink-Richardson patent; that all other prior art, including prior public use and sale cannot be employed to limit the claims. This is the only substantial issue presented by the appeal at bar. Cf. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 1924, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316.

The Supreme Court's ruling in Marcalus does not require such a result and our opinion in that case looks decidedly the other way. The Supreme Court in Marcalus did *not* hold that prior art (other than prior expired patents) could not be employed by the vendor of the patent to limit claims.

Our opinion in Marcalus said: "If we are correct in our conclusion that under the rule of the Formica decision the prior art measures the extent of the anticipation and the anticipation *limits* the claims, anticipation being complete in the instant case, the claims of the patent must be limited to nought." See 147 F.2d at page 613. True this was *dictum* for it was not necessary to go this far in Marcalus. But in the instant case on the present record it is necessary to decide whether prior art, other than prior expired patents, can be employed to limit the claims of Fink-Richardson. This is so because Hall has pleaded not only prior art as represented by the patents hereinbefore referred to but has also pleaded prior public use and sale.

The majority relies, as did Chief Judge Leahy in the court below, on the established doctrine that where a voluntary compromise is reached it is normally binding, as is any contract. I agree. But, aside from the Formica-Marcalus exception as to limitation of claims, it has always been the law that a licensee could not attack the patent under which he was licensed. Under the Formica-Marcalus doctrine the overriding consideration became and is the limitation of monopoly for the public good, so that attack can be permitted. There is no sound reason why the courts should permit a license, even though issued pursuant to a compromise agreement and after a judgment of dismissal agreed to by the parties, to be employed as a bar to an attack on a monopoly.

The majority opinion states that the estoppel principle is not "moribund", referring to Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 1950, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312, and quoting from that opinion. But the issue as to whether the Marcalus doctrine was to be limited to prior art represented by expired patents was simply not in focus in the majority opinion of the Supreme Court in that case though Mr. Justice Douglas referred to Marcalus in his dissent. This is demonstrated by the fact that in the opinion Hazeltine Research v. Automatic Radio Mfg. Co., in the United States District Court for the District of Massachusetts, 77 F.Supp. 493, 497, no mention is made of prior art. The Court of Appeals for the First Circuit by Chief Judge Magruder said: "Although Automatic's motion for summary judgment and its supporting affidavit make the general statement that none of Hazeltine's patents covered by the license are valid, no concrete attempt was made to buttress these assertions, and the district court concluded: 'Furthermore, the defendant does not purport to contest the validity of all plaintiff's patents.' D.C., 77 F.Supp. at page 497." See 176 F.2d at page 806.

In conclusion it should be pointed out that in Marcalus Mr. Chief Justice Stone laid emphasis on the patent statute itself. He said, 326 U.S. at pages 257–258,

66 S.Ct. at page 105: "The interest in private good faith is not a universal touchstone which can be made the means of sacrificing a public interest secured by an appropriate exercise of the legislative power. The patent laws preclude us from saying that the patent assignment, which they authorize, operates to estop the assignor from asserting that which the patent laws prescribe, namely, that the invention of an expired patent is dedicated to the public, of which the assignor is a member.

"The judgment is affirmed for the reason that we find that the application of the doctrine of estoppel so as to foreclose the assignor of a patent from asserting the right to make use of the prior art invention of an expired patent, which anticipates that of the assigned patent, is inconsistent with the patent laws which dedicate to public use the invention of an expired patent. The assignor has a complete defense to an action for infringement where the alleged infringing device is that of an expired patent."

Mr. Chief Justice Stone stated in substance that since the patent statute proscribed the continuation of a patent monopoly beyond 17 years an assignor is not estopped to limit the claims of his assignee's patent where the disclosures of the patent lie in the public domain by virtue of a prior expired patent. I cannot conclude that prior art made available by the expiration of a patent monopoly by the terms of the patent statute is entitled to greater weight in effecting the limitation of claims than any other prior art. Mr. Justice Reed and Mr. Justice Frankfurter [1] indicated somewhat similar views in their dissenting opinions in Marcalus, 326 U.S. respectively at page 258 and page 263, 66 S.Ct. at pages 105 and 107.

But, quite aside from the foregoing, under the new Patent Act, in effect January 1, 1953, approximately fifteen months before the judgment in the instant case was handed down, the granting of a patent monopoly was proscribed where there was only an *unobvious* advance over the prior art: for example, where the patent disclosed only prior art plus mere mechanical skill or ingenuity.[2] It appears, therefore, that at the time of the judgment of the court below there was a statutory prohibition of the sort specifically referred to by Mr. Chief Justice Stone in Marcalus. An attack by way of limitation of claims based upon an existing statutory prohibition as here therefore should be allowed on the basis of the entire existing art. The fundamental law itself authorizes the attack. Article I, Section 8, of the Constitution.

For the reasons stated I dissent from the limiting views expressed in the majority opinion. I agree with the majority, however, that the judgment should be vacated and the cause remanded for further treatment.

1. Mr. Justice Frankfurter stated in Marcalus as a basis for his dissent, 326 U.S. at pages 258–259, 66 S.Ct. at pages 106: "When by a fair and free bargain a man sells something to another, it hardly lies in his mouth to say, 'I have sold you nothing.' It certainly offends the rudimentary sense of justice for courts to support one who purports to sell something to another in saying 'What I have sold you is worthless,' even though he did not expressly promise that what he sold had worth."

The situation at bar is very different, however, from those which were before the Supreme Court in Marcalus and Formica. In the Marcalus case, Marcalus sold his patent to his own company for stock. In Formica, it was said that " * * * an assignor of a patent right is estopped to attack the utility, novelty or validity of a patented invention which he has assigned or granted as against any one claiming the right under his assignment or grant." 266 U.S. at page 349, 45 S.Ct. at page 119. But here, by analogy, Nalco is the vendor and Hall, the vendee: Nalco, the assignor, and Hall, the assignee.

2. It appears from the Reviser's Note, cited to Section 103, Title 35, U.S.C., that the provisions of Section 103 are a statutory expression of the law as it existed prior to January 1, 1953.